UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| SOUTHWEST AIRLINES CO.,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA, acting through U.S. Customs and Border Protection<br><br>Defendant. | Case No. _____ |

# COMPLAINT

Plaintiff Southwest Airlines Co. ("Southwest"), by and through its attorneys, alleges as follows:

## INTRODUCTION

1. Southwest brings this action against U.S. Customs and Border Protection ("CBP"), for the recovery of sums unlawfully exacted by CBP under the pretense of statutory and regulatory authority relating to the Customs Passenger Processing Fee (the "Fee"). *See* 19 U.S.C. § 58c(a)(5)(A) and 19 C.F.R. § 24.22(g). Generally, the Fee is paid by airline passengers, collected by airlines, and remitted by those airlines to CBP.

2. The Fee applies to "the arrival of each passenger aboard a . . . commercial aircraft from a place outside the United States." 19 U.S.C. § 58c(a)(5)(A). The Fee is a true user fee, meant to compensate CBP for providing customs services to international air passengers arriving

1

in the United States.  *See, e.g., id*. § 58c(e).  Yet, in this case, Defendant takes the position that it is entitled to Fees even when airline customers cancel their tickets and thus never travel at all.  Under that flawed theory – which is precluded by the statute's plain text – Defendant has illegally exacted from Southwest the principal amount of $378,088.26, plus $66,585.13 in interest, all of which Southwest has paid to Defendant under protest.

3. Southwest has some of the most generous refund policies of any airline in the world.  In accordance with Southwest's Contract of Carriage, even "nonrefundable" tickets can be refunded in some circumstances.  Specifically, in the event a customer holding a "nonrefundable" ticket decides not to travel, the ticket is cancelled and Southwest refunds all amounts originally paid as airfare, taxes, and fees in the form of a Residual Travel Fund (or "RTF") in the customer's name.  An RTF is an electronic credit that the customer may elect to use to purchase future travel on Southwest.  As further provided in the Contract of Carriage, if the customer elects not to use the RTF for future travel within the eligibility period, the entire amount of the RTF is forfeited.  However, most Southwest customers do in fact use their RTFs for future travel.

4. Following an audit by CBP of Southwest's compliance with the statute and regulations governing the Fee, CBP issued an assessment against Southwest in the principal amount of $378,088.26, plus the $66,585.13 in interest (the "Assessment").  According to CBP, the principal amount of the Assessment reflects Fees that CBP contends Southwest should have either paid to CBP or refunded to the customer.  The Assessment is based solely on instances where CBP determined that Southwest customers (1) elected not to travel on their "nonrefundable" international tickets (and thus, did not use or receive any customs services), (2)

received a refund from Southwest in the form of an individual RTF pursuant to the applicable fare rules, and (3) did not subsequently use the RTF for future travel prior to the RTF's expiration.  Tellingly, CBP did not assess Southwest in instances where an RTF had been fully or partially used by the customer for future travel (without regard to whether the new travel involved an international segment to which the Fee applied), recognizing by implication that an RTF is in fact a valid refund.

5. Southwest protested the Assessment, but CBP denied that protest.

6. In both the audit and the protest denial, CBP relied on a short October 28, 2010 letter that CBP sent to the International Air Transport Association (the "2010 CBP Letter").  The 2010 CBP Letter states: "To the extent user fees are collected on behalf of CBP for unused tickets and such fees are not refunded to purchasers, the user fees are considered to be held in trust for the United States and must still be remitted, without credit, to CBP."  The letter did not, however, explain how that assertion is supported by the CBP's underlying statutory authority, nor was it issued pursuant to applicable rule-making process.

7. CBP's Assessment constitutes an illegal exaction for several independent reasons.  First, the applicable statutory and regulatory provisions unambiguously state that CBP is entitled to a Fee only when a passenger actually travels on a plane from outside the United States into the United States.  For example, the statute provides that the Fee applies to "the *arrival of each passenger* aboard a . . . commercial aircraft from a place outside the United States."  19 U.S.C. § 58c(a)(5)(A) (emphasis added).  The applicable regulation states that the Fee "must be collected and remitted to CBP for services provided in connection with *the arrival of each passenger* aboard a . . . commercial aircraft from a place outside the United States."  19 C.F.R. §

24.22(g)(1)(i) (emphasis added).  CBP simply has no authority to obtain any Fee amounts when the customer does not travel, and thus does not "arrive" in the United States, and CBP performs no customs services.  The 2010 CBP Letter is contrary to the plain language of the statute and regulation and, in any event, is not a validly promulgated regulation.

8. Second, even if CBP had such authority to assess Fees on passengers who do not travel (and it does not), in all the cases in question Southwest refunded the amounts it originally collected as Fees to the customers in the form of RTFs.  The RTF is a valid refund when issued to the customer, giving that person the option to use the funds for future travel on Southwest.  The subsequent disposition of an RTF pursuant to Southwest's Contract of Carriage between Southwest and its customer does not alter the conclusion that an RTF is a valid refund when issued.  And, even though the 2010 CBP Letter does not properly state the law, nothing therein precludes RTFs from qualifying as refunds.

9. Third, Defendant has never given Southwest fair notice of its newly adopted positions that travel credits such as RTFs do not qualify as refunds.

10. In addition to the Assessment, CBP, pursuant to 19 C.F.R. § 113.64(b)(1), also demanded that Southwest pay liquidated damages of $724,081.06 – an amount almost twice the principal sum at issue – for failing to timely pay Fees as CBP determined in the Assessment.  Southwest filed a petition for relief requesting that CBP cancel those liquidated damages demands on the grounds that they too were unlawful, since no Fees were owed by Southwest in the first place.  CBP denied that petition.

## JURISDICTION AND STANDING

11. For jurisdictional purposes, the Fee is treated as a customs duty. *See* 28 U.S.C. § 1581(g)(2).

12. As to Southwest's challenge to the Assessment, this Court has jurisdiction pursuant to 28 U.S.C. § 1581(a).

13. Southwest has standing under 28 U.S.C. § 2631 to commence and prosecute this civil action contesting the denial by CBP, under section 515 of the Tariff Act of 1930 (19 U.S.C. § 1515) of a protest filed by Southwest under section 514 of the Act (19 U.S.C. § 1514).

14. As to Southwest's challenge to the liquidated damages demands, this Court has jurisdiction pursuant to 28 U.S.C. § 1581(i)(1)(D).

## PARTIES

15. Plaintiff is Southwest, a corporation formed under the laws of Texas and having its principal place of business in Dallas, Texas.

16. Defendant is CBP.

## TIMELINESS OF THIS ACTION

17. Southwest is filing a Summons concurrently with this Complaint.

18. Where jurisdiction vests under 28 U.S.C. § 1581(a), a plaintiff must file an action within 180 days after CBP denies a protest submitted by the plaintiff.

19. On May 13, 2020, in Protest Number 9900-2020-100001, Southwest timely protested the CBP's Assessment of the aforementioned $378,088.26 principal amount and $66,585.13 in interest, both of which Southwest had previously paid.

20. On November 9, 2021, CBP denied that protest.

21.     Southwest files its Summons and this Complaint within 180 days of the date of denial by CBP of Southwest's protest in accordance with 28 U.S.C. § 2636. Accordingly, the Complaint is timely filed.

## STATEMENT OF FACTS

### The Customs Passenger Processing Fee

22.     CBP is responsible for customs services within the United States. Such customs services include inspection services in connection with the arrival of international passengers aboard commercial aircraft into the United States.

23.     To fund the expenses related to those and other customs inspection services, Congress passed section 13031 of the Consolidated Omnibus Reconciliation Act of 1985, codified at 19 U.S.C. § 58c (the "Fee Statute"). By enacting the Fee Statute, Congress transferred the responsibility for all customs inspection service costs to Defendant at no cost to passengers and airlines, except for the imposition of certain customs user fees expressly authorized by the statute. The Fee Statute provides that all user fees collected shall be deposited into a separate account in the U.S. Treasury known as the "Customs User Fee Account," over which Defendant maintains exclusive control.

24.     As applicable to commercial airline passengers, the Fee Statute authorizes a user fee (*i.e.*, the Fee) "for the arrival of each passenger aboard a . . . commercial aircraft from a place outside the United States." *Id*. § 58c(a)(5)(A). The Fee is the only fee under the Fee Statute that is authorized with respect to commercial airline passengers and the only fee at issue in this case.[1]

---

[1] CBP's audit of Southwest also covered an immigration user fee and a APHIS user fee, and CBP's denial of Southwest's protest addressed the former of those. Although Southwest also

25. Congress established the Fee as a means to pay for customs inspection services actually provided by Defendant. *See, e.g., id*. § 58c(e)(1).

26. In general, the person issuing an airline ticket is responsible for collecting the Fee from the customer at the time the ticket is issued. *See id*. § 58c(d)(1)(A). The collector is responsible for remitting Fees to Defendant for passengers holding tickets that require customs services. *See id*. § 58c(d)(3). Fees remitted by carriers are deposited by Defendant into the Customs User Fee Account. The Fee Statute is silent as to refunds of Fees.

### Residual Travel Funds

27. When the holder of a "nonrefundable" ticket on Southwest decides not to travel, the ticket is cancelled and, in exchange, Southwest will typically issue an RTF to the customer for the entire amount originally paid (including the amount originally paid as airfare, taxes, and user fees).

28. RTFs are refunds to the customer, and are reflected as "refunds" in Southwest's records. When a ticket is cancelled and an RTF is issued to the customer in exchange, all of the accounting entries associated with the original sale of the ticket are reversed and no airfare, taxes, or Fees are identified in the RTF (nor are the funds at issue identified elsewhere in Southwest's records as airfare, taxes, or Fees).

29. Southwest does not pay Fees on cancelled tickets to CBP (and if any Fees had already been paid to CBP before the ticket was cancelled, Southwest recalls the Fees from CBP after the ticket cancellation). On the other hand, if any RTF is used to purchase a ticket to which

---

challenges the government's assessments of those fees, jurisdiction over such disputes does not lie in this Court.

the Fee applies, Southwest collects the Fee from the customer (either from the RTF or another form of payment) at the time of such purchase and remits the Fee to CBP.

30. When Southwest communicates with a customer receiving an RTF for a cancelled ticket, Southwest refers to the RTF as a refund.

31. Southwest's Contract of Carriage makes clear that an RTF (sometime referred to therein as "Travel Credit") is a refund.

32. In an audit of Southwest involving a different air passenger user fee, a CBP auditor described RTFs as instances where the customer "retain[s] all funds for future use to purchase another ticket to fly on Southwest" and where the "total amount paid for the cancelled ticket (base fare plus all passenger taxes and fees associated with the itinerary) is refunded to the customer in the form of a residual travel fund (RTF)."

## Defendant's Fee Audit of Southwest

33. Pursuant to regulations authorized by the Fee Statute, Defendant is authorized to conduct Fee audits of collectors, including air carriers such as Southwest, to "verify the accuracy of fee calculations and to otherwise determine compliance under the law." 19 C.F.R. § 24.22(g)(6).

34. On or about September 18-22, 2017, Defendant audited Southwest's Fee compliance (and compliance with several other government air transportation user fees). The Assessment covers the audit period of July 1, 2014 through June 30, 2017 (although the audit also covered other periods as to unrelated issues).

35. On November 12, 2019, Defendant issued a "User Fee Audit Report" resulting from the audit.

36. In the relevant portion of the audit, Defendant used a sampling methodology by reviewing 100 "nonrefundable" tickets that Defendant determined were cancelled by the customers. In 88 of those instances, Southwest issued a refund to the customer in the form of an RTF.

37. Of those 88 tickets, Defendant asserted that 21 were "errors" because they involved instances where "the passenger did not use the non-refundable purchased ticket and was issued an RTF by Southwest that went unused and eventually expired."

38. Defendant used the term "error" in the audit to refer to instances where Defendant asserted Southwest had not properly collected or remitted the Fee.

39. Defendant's position in the audit was that RTFs that were used in full or in part for other travel on Southwest qualify as "refunds." Defendant also maintained in the audit that the "determination as to whether an RTF constitutes a refund of any collected passenger user fees cannot be made until the RTF either expires unused or is used to purchase new air transportation."

40. In contrast, Defendant asserted that RTFs that expire completely unused do not qualify as "refunds."

41. Consistent with Southwest's experience that most customers do in fact use their RTFs, most of the aforementioned 88 tickets refunded via RTF involved situations where the customers did in fact use the RTF for future travel.

42. Accordingly, if a ticket among the 88 sample tickets was not used and was cancelled in exchange for an RTF that the customer subsequently used in full or part, Defendant did not treat such tickets as "errors." That is true regardless of whether the subsequent travel

9

purchased by the customer with the RTF was wholly within the United States (and thus did not necessitate any customs services from Defendant or require the payment of any Fee).

43. Defendant extrapolated the 21 supposed "errors" over Southwest's Fee remittances to compute a supposed underpayment of $378,118.13 attributable to these supposed "errors."

44. Defendant also determined that Southwest over-remitted $29.87 associated with so-called nonrefundable tickets that were cancelled in exchange for an RTF, leaving a total purported underpayment of $378,088.26 associated with that category of tickets.

45. Separately, Defendant also determined that Southwest had over-remitted $6.50 in Fees associated with a different category of tickets.

46. On November 20, 2019, Defendant issued the Assessment against Southwest based on the audit. As to the Fee, Defendant's Assessment claimed that Southwest had a liability due to CBP of $378,081.76. That amount represents the aforementioned $378,088.26 associated with "nonrefundable" tickets refunded via RTF, minus the $6.50 over-remittance associated with an unrelated issue.

47. Southwest paid the $378,081.76 to CBP under protest on January 6, 2020.

48. On February 18, 2020, CBP assessed $66,585.13 in interest on the $378,081.76 (plus $16,944.84 in interest in connection with a different air passenger user fee, for total interest assessments of $83,529.97).

49. On March 4, 2020, Southwest paid the aforementioned interest assessments (as well as penalties assessed in connection with a different air passenger user fee) under protest.

50. As stated above, on May 13, 2020, in Protest Number 9900-2020-100001,

Southwest timely protested the CBP's assessment of the aforementioned $378,088.26 principal amount and $66,585.13 in interest, and sought a refund of those amounts.

51. On November 9, 2021, CBP summarily and arbitrarily denied that protest without addressing Southwest's arguments in the protest that the Assessment was unlawful because (1) in each case no passengers traveled on a plane at all, let alone from outside the United States to arrive in the United States, and (2) in addition, Southwest validly refunded all the supposed "error" tickets to the customers in the form of RTFs. As stated above, in denying Southwest's protest CBP relied in large part on the 2010 CBP Letter.

### Defendant's Liquidated Damages Demands

52. On June 18, 2020, CBP issued to Southwest eleven CBP Forms 5955A, entitled "Notice of Penalty or Liquidated Damages Incurred and Demand for Payment," each of which demanded that Southwest pay liquidated damages for failing to have timely paid the Fees at issue in the Assessment. We refer to these eleven Forms 5955A as the "Demands."

53. Each of the Demands covers one calendar quarter of the period covered by the Assessment.

54. In the aggregate, the Demands seek $724,081.06 in liquidated damages from Southwest.

55. The Demands are assigned the following case numbers by CBP and are in the following amounts:

| Case Number | Amount |
|---|---|
| 2020-4111-20436601 | $44,825.54 |
| 2020-4111-20436701 | $46,343.22 |
| 2020-4111-20436801 | $45,668.70 |
| 2020-4111-20436901 | $69,062.06 |

11

|                   |             |
|-------------------|-------------|
| 2020-4111-20437001 | $80,198.58 |
| 2020-4111-20437101 | $72,843.54 |
| 2020-4111-20437201 | $63,273.20 |
| 2020-4111-20437301 | $84,160.24 |
| 2020-4111-20437401 | $93,682.06 |
| 2020-4111-20437501 | $79,711.18 |
| 2020-4111-20437601 | $44,312.74 |

56. On August 14, 2020, Southwest submitted to CBP a petition for relief pursuant to 19 C.F.R. § 172.2.

57. In that petition for relief, Southwest requested that CBP cancel the Demands on the grounds that the allegedly late-paid Fees upon which Demands were based were not owed by Southwest in the first place. In the petition for relief, Southwest again argued that the Fees at issue were not owed (and thus no liquidated damages could be assessed) because (1) in each case no passengers traveled on a plane and "arrived" in the United States, and, separately, (2) Southwest validly refunded all the supposed "error" tickets to the customers in the form of RTFs.

58. On March 23, 2022, CBP denied the petition for relief, again relying on the 2010 CBP Letter.

## STATEMENT OF CLAIMS

59. The Fee Statute and the regulations thereunder authorize Defendant to obtain a Fee only when an actual passenger arrives in the United States on an airplane. None of the 21 supposed "errors" on which Defendant's Assessment is based involved such a scenario. Accordingly, Defendant exceeded its statutory authority by assessing Southwest on the basis of the 21 supposed "errors," and thus Defendant's Assessment is unlawful.

60. The 2010 CBP Letter's view that, "To the extent user fees are collected on behalf of CBP for unused tickets and such fees are not refunded to purchasers, the user fees are

considered to be held in trust for the United States and must still be remitted, without credit, to CBP" is contrary to the Fee Statute and the applicable regulations and should be rejected. In addition, even if not precluded the Fee Statute or the applicable regulations, the 2010 CBP Letter is not a validly promulgated regulation or ruling and should be rejected.

61.     Separately, Defendant agrees that no Fee is owed if the amount Southwest originally collected as a Fee was refunded to the customer.

62.     For each of the 21 supposed "errors," Southwest did in fact refund the amount originally collected as a Fee to the customer in the form of an RTF in accordance with Southwest's Contract of Carriage. Defendant has no authority to regulate the form of Southwest's refunds or the disposition of RTFs, both of which are governed by the Contract of Carriage between Southwest and its customers.

63.     Even if Defendant did have such authority (and it does not), Defendant has never before informed Southwest or the public that it does not consider electronic travel credit such as RTFs not to qualify as refunds. Thus, in addition to the fact that there is no basis for Defendant's new position that RTFs do not qualify as refunds, Defendant failed to give Southwest fair notice of that position.

64.     For each of these independent reasons, Defendant's Assessment, based solely on the 21 supposed "errors" in the audit, of $378,088.26, plus an additional $66,585.13 in interest thereon, is unlawful, and Defendant should be ordered to refund those amounts to Southwest.

65.     The Demands are premised on 19 C.F.R. § 113.64(b)(1), which states that if a carrier "fails to pay [F]ees to CBP within 31 calendar days after the close of the calendar quarter in which they were required to be collected pursuant to § 24.22(g) of this chapter, the obligors

(principal and surety, jointly and severally) agree to pay liquidated damages equal to two times the passenger processing fees that were required to be collected but not timely remitted to CBP, regardless of whether such fees were in fact collected from passengers, as prescribed by regulation."

66.  Accordingly, the Demands are valid only if Southwest owed the Fees at issue in the Assessment.

67.  Because Southwest did not owe the Fees at issue in the Assessment, the Demands too are unlawful.

## PRAYER FOR RELIEF

WHEREFORE, Southwest respectfully requests this Court to:

(1)  Enter judgment awarding Southwest the damages and compensation to which it is entitled, including a refund to Southwest of the sum of the money unlawfully exacted from Southwest by Defendant in the Assessment;

(2)  Enter a declaratory judgment that Defendant's actions in assessing liability – both in the Assessment and in the Demands – associated with unused tickets that are cancelled and exchanged for RTFs that expire unused is illegal and unlawful and contrary to statute and regulation, including but not limited to declarations that the Demands and the 2010 CBP Letter are unlawful and cannot be enforced;

(3)  Enter judgment enjoining Defendant from enforcing the Demands or the 2010 CBP Letter or otherwise seeking to demand or collect liquidated damages from Southwest or its surety in connection with the Fees allegedly at issue in the Assessment;

(4)     Enter judgment awarding Southwest any and all other damages to which it is entitled by law;

(5)     Enter judgment awarding Southwest costs and interest as allowed by law; and

(6)     Enter judgment awarding such other and further relief as this Court deems just.

Respectfully submitted,

/s/ *Adam P. Feinberg*
Adam P. Feinberg
Richard A. Mojica
**Miller & Chevalier Chartered**
900 16th Street NW
Washington, DC 20006
Phone: (202) 626-5800
Fax: (202) 626-5801
Email: afeinberg@milchev.com
            rmojica@milchev.com

Dated:  May 6, 2022