UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE:  THE HON. GARY S. KATZMANN, JUDGE

| | | |
|---|---|---|
| SOUTHWEST AIRLINES CO., | : | |
| | : | |
| Plaintiff, | : | Court No. 22-00141 |
| | : | |
| v. | : | |
| | : | |
| UNITED STATES, | : | |
| | : | |
| Defendant. | : | |

## MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

## AND

## REPLY MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

August 30, 2024

Adam P. Feinberg
Richard A. Mojica
Miller & Chevalier Chartered
900 16th Street NW
Washington, DC 20006
Phone: (202) 626-5800
Fax: (202) 626-5801
afeinberg@milchev.com
rmojica@milchev.com

*Attorneys for Plaintiff, Southwest Airlines Co.*

## <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF AUTHORITIES........................................................................................................ii

INTRODUCTION ...................................................................................................................1

ARGUMENT .........................................................................................................................4

I.     THE PLAIN LANGUAGE OF THE STATUTE AND REGULATIONS DO NOT AUTHORIZE CBP TO ASSESS A FEE WHEN A TICKET IS CANCELLED, NO PASSENGER ARRIVES IN THE UNITED STATES ABOARD A COMMERCIAL AIRCRAFT, AND THUS NO CUSTOMS SERVICES ARE RENDERED BY CBP. ...........................................................................4

        A.     Defendant's Interpretation Is Inconsistent with the Plain Language of the Statute. .......................................................................................................4

        B.     The Regulations and Other Sources Confirm that Defendant's Interpretation Should be Rejected. ....................................................................7

II.    DEFENDANT'S POSITIONS THAT AN AMOUNT REMAINS A "COLLECTED" FEE UNLESS IT HAS BEEN REFUNDED TO THE CUSTOMER AND THAT A REFUND MUST BE IN CASH HAVE NO BASIS IN THE LAW AND ARE SPUN FROM WHOLE CLOTH. .........................................11

        A.     No Statutory or Regulatory Authority Provides that a "Refund" Is the Only Way a Fee Can Become "Uncollected."......................................................12

        B.     No Statutory or Regulatory Authority Provides that a Refund Must Be in Cash or to the Customer's Form of Payment...........................................................13

        C.     An RTF Is a "Refund" But Even If It Were Not, It Is Still Has Value When Issued Thereby Rendering the Fee "Uncollected." .....................................16

                1.     When Issued, an RTF Is a Thing of Value, which Renders the Fee Uncollected. ................................................................................16

                2.     An RTF Is a Refund, which Renders the Fee Uncollected........................18

III.   DEFENDANT'S CONSTRUCTIVE TRUST ARGUMENT IS A RED HERRING AND FAILS FOR OTHER REASONS. .........................................................21

        A.     Defendant's Trust Theory Is Irrelevant. ................................................................22

        B.     Defendant's Trust Theory Fails for Other Reasons...............................................24

IV.   CBP DID NOT GIVE SOUTHWEST FAIR NOTICE OF ITS INTERPRETATIONS. ......................................................................................................26

i

CONCLUSION.................................................................................................................................29

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*American Airlines, Inc. v. United States*,
    551 F.3d 1294 (Fed. Cir. 2008)........................................................................6, 7, 8

*Caver v. Cent. Ala. Elec. Coop.*,
    845 F.3d 1135 (11th Cir. 2017) ..............................................................15, 16

*Counihan v. Allstate Ins. Co.*,
    194 F.3d 357 (2d Cir. 1999)........................................................................23

*Davis v. Cent. Ala. Elec. Coop.*,
    No. 15-0131, 2015 WL 5285894 (S.D. Ala. Sept. 8, 2015) ....................................14

*Davis v. Mich. Dep't of Treasury*,
    489 U.S. 803 (1989)........................................................................4, 14, 16

*Diebold, Inc., v. Marshall*,
    585 F.2d 1327 (6th Cir. 1978) ....................................................................27

*Dowding v. Nationwide Mut. Ins. Co.*,
    490 F. Supp. 3d 1291 (N.D. Ill. 2020) ..........................................................16, 17

*Gen. Elec. Co. v. EPA*,
    53 F.3d 1324 (D.C. Cir. 1995)..................................................................27, 28

*Graham Cnty. Soil & Water Conservation Dist. v. United States ex rel. Wilson*,
    559 U.S. 280 (2010)..............................................................................4

*King v. Burwell*,
    576 U.S. 473 (2015)..............................................................................4

*Kisor v. Wilkie*,
    588 U.S. 558 (2019)..............................................................................13

*Loper Bright Enters. v. Raimondo*,
    144 S. Ct. 2244 (2024)........................................................................2, 5, 7, 13

*Massachusetts v. United States*,
    435 U.S. 444 (1978)..............................................................................10

*Trinity Broad. of Fla., Inc. v. FCC*,
    211 F.3d 618, 627, 632 (D.C. Cir. 2000) ............................................................27

*Turkiye Halk Bankasi A.S. v. United States*,
   598 U.S. 264 (2023)........................................................................................4, 5

*United Airlines, Inc. v. United States*,
   111 F.3d 551 (7th Cir. 1997) ...................................................................18, 19, 20

**Statutes**

19 U.S.C. § 58c............................................................................................*passim*

26 U.S.C. § 4261 ...................................................................................................15

**Other Authorities**

7 C.F.R. § 1767.41 ................................................................................................14

19 C.F.R. § 24.22 .......................................................................................7, 8, 9, 10

Rev. Rul. 89-109, 1989-2 C.B. 232 ......................................................................15

George Taylor Bogert et al., *The Law of Trusts and Trustees* (July 2024)............................22, 26

Restatement (Third) of Restitution and Unjust Enrichment (Am. Law Inst. 2011) .........21, 22, 25

GAO, *Commercial Aviation: Consumers Could Benefit from Better Information
   about Airline-Imposed Fees and Refundability of Government-Imposed Taxes
   and Fees* (July 2010), *available at* https://www.gao.gov/assets/gao-10-785.pdf....................10

Plaintiff Southwest Airlines Co. ("Southwest") respectfully submits this Memorandum of Law in Opposition to Defendant's Cross-Motion for Summary Judgment (ECF No. 46 (sealed version); ECF No. 47 (public version)) and Reply Memorandum in Support of Plaintiff's Motion for Summary Judgment (ECF No. 40).

## INTRODUCTION

19 U.S.C. § 58c, the statute that governs the Customs Passenger Processing Fee (the "Fee") and its accompanying regulations are clear: U.S. Customs and Border Protection ("CBP") is not entitled to a Fee under the circumstances at issue in this case because there was no passenger and CBP rendered no customs services. Defendant's Memorandum in Support of its Cross-Motion for Summary Judgment and Response in Opposition to Plaintiff's Motion for Summary Judgment ("Defendant's Memorandum" or "Def.'s Mem.")[1] fails to compel a different statutory interpretation or application of the law to the facts.

First, while Southwest reads all of the relevant sections of the statute together in a way that harmonizes them, Defendant isolates Section 58c's collection provision in a way that violates the rules of statutory interpretation, arguing that CBP is entitled to a Fee whenever there is a ticketed individual from whom a Fee was collected, even if that individual never travels and never receives any customs services. But CBP's authority to trigger a potential Fee liability upon ticketing is not in dispute. Rather, Defendant fails to address the overall statute, which makes clear that CBP is entitled to receive a Fee only if there is an "arrival of [a] passenger aboard a . . . commercial aircraft from a place outside the United States" and does not grant CBP authority to reach beyond the express language of the statute. 19 U.S.C. § 58c(a)(5)(A); *see also*

---

[1] Defendant's Memorandum can be found at ECF No. 46 (sealed version) and ECF No. 47 (public version).

19 U.S.C. § 58c(j)(2) ("Fees may be charged under subsection (a)(5) only with respect to customs services rendered in regard to arriving passengers using transportation for which documents or tickets were issued after" a certain date).  This issue alone is dispositive as CBP is seeking to collect fees from Southwest *for passengers who never traveled*.

Second, even if Defendant were correct that CBP is entitled to a Fee whenever there is a ticketed individual from whom a Fee was collected, Defendant errs when it assumes that the only way a Fee can become "uncollected" is for it to be refunded to the customer.  Nothing in the statute or regulations authorizes that result (or even mentions the word "refund").  And in fact, Defendant's own treatment of certain tickets belies its argument, by conceding that Fees associated with certain canceled tickets that were neither refunded in cash, nor remitted to CBP, are outside of CBP's reach.  Defendant's constructive trust argument is a red herring and has no relevance, because it is similarly unsupported by statutory language and depends on CBP having an entitlement to Fees in the first place.  But, if CBP has no such entitlement, there cannot be a construct trust.  And if CBP does have such an entitlement to the Fees, the existence of a constructive trust does not matter.

Instead, presumably because the statute and regulations do not support its position, Defendant leans heavily on the informal 2010 CBP Letter (ECF No. 14-1 at ECF pp. 82-83), despite the fact that Defendant has waived the right to seek any deference or respect for the letter.  *See* ECF No. 40-11 at ECF p. 2.  The 2010 CBP Letter it is not the law and is not entitled to any deference or respect, even before the Supreme Court's recent *Loper Bright* decision and less so after.  Congress never delegated to CBP the authority to decide whether and when cancelled tickets should still result in the carriers owing Fees to the CBP.  More importantly, the letter does not change the fact that the better and more harmonious statutory reading is that a Fee

2

is not "collected" under Section 58c if the ticket has been cancelled and value has been returned to the customer, even if that value is not returned to the original form of payment. A Southwest Residual Travel Fund ("RTF") qualifies as the return of value at the moment it is issued, even if it later expires unused.

Third, even if Defendant were correct that CBP is entitled to a Fee whenever there is a ticketed individual from whom a Fee was collected and that the only way a Fee can become "uncollected" is for it to be refunded to the customer, Defendant is wrong when it argues that refunds must be in cash and thus, that RTFs cannot qualify. That position goes well beyond both the statute and the 2010 CBP Letter, as evidenced by Defendant's contorted application of statutory interpretation techniques to the letter (which, of course, is not a statute, regulation, or legal text of any kind). Tellingly, Defendant fails to address both the legal authorities and the facts that each strongly support the conclusion that RTFs are in fact refunds.

Finally, even if the Court's rejects all of these arguments and denies Southwest's motion, it should not grant Defendant's cross-motion. Defendant has failed to show the absence of a dispute of material fact as to whether CBP gave Southwest fair notice of its interpretations, both because Defendant has not proved that Southwest was on actual notice of the 2010 CBP Letter before the Audit at issue in this case and, regardless, CBP has never before explained what it meant by "refund" or that travel credit could not qualify as one.

## ARGUMENT

I.  **THE PLAIN LANGUAGE OF THE STATUTE AND REGULATIONS DO NOT AUTHORIZE CBP TO ASSESS A FEE WHEN A TICKET IS CANCELLED, NO PASSENGER ARRIVES IN THE UNITED STATES ABOARD A COMMERCIAL AIRCRAFT, AND THUS NO CUSTOMS SERVICES ARE RENDERED BY CBP.**

### A.  Defendant's Interpretation Is Inconsistent with the Plain Language of the Statute.

Defendant's statutory interpretation argument is based entirely on 19 U.S.C. § 58c(d)(1)(A) and (d)(3), which state that "[e]ach person that issues a document or ticket to an individual for transportation by a . . . commercial aircraft into the customs territory of the United States shall . . . collect from that individual the fee charged under subsection (a)(5) at the time the document or ticket is issued" and that the "person who collects fees under [that provision] shall remit those fees to" the government.  Specifically, Defendant asserts that these provisions mean that airlines are liable to CBP for any fees they actually collect from a ticketed individual, regardless of whether there is a passenger who is transported on an aircraft.  *See* Def.'s Mem. at 11-13.  That interpretation cannot be squared with other text in the statute, with the overall statutory scheme, with CBP's regulations, or with other statements by CBP.

As to the basic statutory interpretation issue, Defendant's focus on Section 58c(d) "[i]n complete isolation" is fundamentally flawed.  *Turkiye Halk Bankasi A.S. v. United States*, 598 U.S. 264, 275 (2023).  Instead, courts have a "duty to construe statutes, not isolated provisions." *Id*. (quoting *Graham Cnty. Soil & Water Conservation Dist. v. United States ex rel. Wilson*, 559 U.S. 280, 290 (2010) (internal quotation marks omitted)).  Courts "must read the words Congress enacted 'in their context and with a view to their place in the overall statutory scheme.'" *Id*. (quoting *Davis v. Mich. Dep't of Treasury*, 489 U.S. 803, 809 (1989)); *see also King v. Burwell*, 576 U.S. 473, 486 (2015).  Thus, even if "[i]n complete isolation" Section 58c(d) "might be amenable to th[e] reading" Defendant proposes, the Court should not adopt that reading if it is at

4

odds with "the overall statutory scheme." *Turkiye Halk Bankasi*, 598 U.S. at 275 (cleaned up).

More generally, the Court should "use every tool at [its] disposal to determine the best reading of

the statute and resolve [any] ambiguity," *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244,

2266 (2024), although here the statute is not ambiguous when read as a whole.  "Courts must

exercise their independent judgment in deciding whether an agency has acted within its statutory

authority."  *Id*. at 2273.

Here, Section 58c's overall statutory scheme makes clear that Defendant's interpretation

cannot be correct.  Section 58c's main provision – which imposes the Fee in the first instance –

provides that CBP "shall charge and collect the following fees . . . for the provision of customs

services in connection with the following: . . . for the arrival of each passenger aboard a . . .

commercial aircraft from a place outside the United States . . . , $5."  19 U.S.C. § 58c(a)(5)(A).

Defendant's interpretation would re-write that provision to say that CBP shall charge and collect

a Fee each time an airline issues a ticket for travel on a commercial aircraft scheduled to arrive

into the United States.  That is simply not what the statute says.  The phrase "each passenger" in

the statute signifies that the Fee applies to individual passengers (not ticket issuances).  Further,

each Fee is "*for* the provision of customs services" – which Defendant admits it did not provide.

Def.'s Resps. to Pl.'s Rule 56.3 Statement of Material Facts Not in Dispute ("Def.'s Fact

Response")[2] ¶ 48.  And each Fee is "*for* the [actual] arrival of each passenger aboard a . . .

commercial aircraft from a place outside the United States" – which Defendant admits never

happened.  *Id*. ¶ 47.  Even Defendant at one point acknowledges that "[a]ccording to the plain

language of the statute, the Secretary of Treasury '*shall* charge and collect' fees *for each*

---

[2] Defendant's Responses to Plaintiff's Rule 56.3 Statement of Material Facts Not in Dispute can
be found at ECF No. 47-2 (public version) and ECF No. 48 (sealed version).

*passenger aboard a commercial aircraft arriving into the United States*."  Def.'s Mem. at 11 (quoting 19 U.S.C. § 58c(a)(5)(A)) (second emphasis added).  Defendant is plainly not entitled to a Fee when there is no such passenger.

Separately, 19 U.S.C. § 58c(j)(2) unambiguously states that "Fees may be charged under subsection (a)(5) only with respect to customs services rendered in regard to arriving passengers using transportation for which documents or tickets were issued after the date that is 90 days after April 7, 1986."  In the single sentence Defendant dedicates to this provision, Defendant correctly notes that it "relates to the effective date" of the Fee, Def.'s Mem. at 12, but ignores the fact that this plain language literally bars Defendant's interpretation.  Fees can be charged "only with respect to customs services rendered in regard to arriving passengers *using transportation*" (and only if the tickets were issued after a certain date).  If there are no "customs services rendered" or no "arriving passengers using transportation" (here there are neither), then no Fees "may be charged."  19 U.S.C. § 58c(j)(2).

Further, Defendant does not dispute that the purpose of the statute is to create a user fee to compensate CBP for providing customs services to international air passengers arriving into the United States.  *See, e.g., id*. § 58c(e); Pl.'s Mem. of Law in Supp. of Pl.'s Mot. for Summ. J. ("Pl.'s Mem.")[3] at 1.  Defendant's interpretation – that CBP can be entitled to Fees even when it provides no such services – inexplicably fails to comport with even the basic purpose of the statute.

Defendant argues that "[t]here is no support in *American Airlines*[*, Inc. v. United States*, 551 F.3d 1294 (Fed. Cir. 2008)] for plaintiff's theory.  Def.'s Mem. at 13.  But in the very next

---

[3] Plaintiff's Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment can be found at ECF No. 40-1 (public version) and ECF No. 41 (sealed version).

sentence of its brief, Defendant explains why *American Airlines* does support Southwest: "the fee is 'imposed on the users of certain services to cover the cost of providing those services.'" *Id*. (quoting *American Airlines*, 551 F.3d at 1306). Again, here there were no customs services provided by CBP and no users of those services (*i.e.*, no passengers).

In sum, Section 58c(a)(5)(A), Section 58c(e), Section 58c(j)(2), and the overall statutory scheme make clear that Section 58c(d) merely describes the general process for collection and remittance of Fees but was not intended to define the circumstances under which a Fee is owed to CBP which, instead, is the job of Section 58(a)(5)(A). The Court's task here is to determine Section 58c's "single, best meaning," *Loper Bright*, 144 S. Ct. at 2226, which is that CBP is entitled to a Fee only when a passenger arrives on a plane into the United States.

**B.    The Regulations and Other Sources Confirm that Defendant's Interpretation Should be Rejected.**

Numerous sources outside the statute also support the view that CBP is entitled to a Fee only when a passenger travels on a plane into the United States. Perhaps most notably, the regulations are consistent with Southwest's view but inconsistent with Defendant's. For example, the regulations state that the Fee is applicable to an "infant traveling without a separate ticket or travel document." 19 C.F.R. § 24.22(g)(4)(i). That is impossible under Defendant's interpretation in this case. If, as Defendant claims, Section 58c(d) governed the instances when Fees are owed, then no Fee could possibly be due for an infant traveling without a separate ticket or travel document, because Section 58c(d) states that the "person that issues *a document or ticket to an individual* for transportation by . . . commercial aircraft into the customs territory of the United States shall . . . collect *from that individual* the fee charged under subsection (a)(5) at the time the document or ticket is issued." 19 U.S.C. § 58c(d)(1)(A) (emphasis added). Because no one issues a ticket or travel document to an "infant traveling without a separate ticket or travel

document," the airline would not be required to collect a Fee under Defendant's interpretation. And if the airline does not collect a Fee, it is not required to remit one. *See id.* § 58c(d)(3); *American Airlines*, 551 F.3d at 1300. Thus, under Defendant's interpretation, an airline would not need to collect or remit a Fee for an infant travelling without a ticket or travel document. Yet, CBP's regulations say the exact opposite. *See* 19 C.F.R. § 24.22(g)(4)(i). Meanwhile, Southwest's reading – that Section 58c(d) describes only the general collection procedure, while the instances in which the Fees are due are defined by Section 58c(a)(5)(A) – is compatible with 19 C.F.R. § 24.22(g)(4)(i), because Fee liability is not premised on whether the infant is issued a ticket or travel document but rather on whether the infant is an arriving "passenger aboard a . . . commercial aircraft from a place outside the United States." 19 U.S.C. § 58c(a)(5)(A).

Further, as Southwest noted in its opening brief (at 13), the regulations state that an airline's payment obligation is "the fees *required to be collected*," not the Fees actually collected. 19 C.F.R. § 24.22(g)(5) (emphasis added). Defendant counters that "the regulations, similar to the statute, provide that a fee 'must be collected and remitted to CBP.'" Def.'s Mem. at 12 (quoting 19 C.F.R. § 24.22(g)(1)). That is only a partial quote of the regulation. Subsection (g)(1) states that, with exceptions not relevant here, a Fee "must be collected and remitted to CBP *for services provided in connection with the arrival of each passenger aboard a . . . commercial aircraft from a place outside the United States*." 19 C.F.R. § 24.22(g)(1)(i). Thus, Defendant is correct that the regulation is similar to the statute – both state that the Fee applies only if (1) there is a passenger,[4] (2) who receives customs services, (3) because they

---

[4] As Southwest explained in its opening brief (at 14) and Defendant ignores, the regulation defines "passenger" as "a natural person for whom transportation is provided." 19 C.F.R. § 24.22(g)(1)(v). Where no transportation is provided, there is no "passenger" and thus there cannot be any Fee that was "required to be collected under paragraph (g)(1)." *Id.* § 24.22(g)(5).

arrive on a plane in the United States from abroad. Those are the only Fees required to be collected under 19 C.F.R. § 24.22(g)(1) and thus the only Fees required to be remitted under 19 C.F.R. § 24.22(g)(5).

Defendant's interpretation here is also internally inconsistent. If, as Defendant claims, 19 U.S.C. § 58c(d) dictates when a Fee is owed, then a Fee would be owed anytime a ticket for travel into the United States was issued, regardless of whether the passenger actually travels or whether a refund is issued. That is because the statute says an airline "shall—collect from th[e] individual" to whom is issued "a document or ticket . . . for transportation by . . . commercial aircraft into the customs territory of the United States" is issued, and the airline "shall remit those fees to" CBP. 19 U.S.C. § 58c(d)(1)(A), (d)(3). If read literally as Defendant urges, there are no exceptions in Section 58c(d) based on whether the customer ends up not travelling and receives a refund of the Fee. *See, e.g.*, Def.'s Mem. at 13 (arguing that "[t]he statute plainly provides that the airline carrier charge and collect the required customs fee at the time the ticket is issued, and remit those collected fees"); *id*. at 11 (arguing that "the statute directs Southwest to remit the collected fee to CBP *and is silent regarding the ultimate disposition of the ticket*") (emphasis added); *id*. (arguing that "shall" is generally a mandatory term); CBP Decision Letter at 2 (ECF No. 14-1 at ECF p. 130) (arguing "that Southwest must transmit to CBP *all* [Fees] collected from its customers on behalf of CBP") (emphasis added).

Yet, Defendant claims that CBP is not entitled to a Fee for a ticketed customer who does not travel and adds an additional caveat – that the Fee is refunded to the customer – that is not found in either statute or regulation. *See, e.g.*, 2010 CBP Letter at 1 (ECF No. 14-1 at ECF p. 82). That is simply incompatible with the view that 19 U.S.C. § 58c(d) dictates when a Fee is

owed, because Section 58c(d), if read literally and in isolation, requires collection and remittance of a Fee for every individual issued a ticket for travel into the United States without exception.

Defendant might respond that the "overpayment" provision in 19 C.F.R. § 24.22(g)(5) allows an airline to receive a credit from CBP if a ticketed customer does not travel, again with the added extra-statutory caveat that the customer receives a refund of the Fee. But under Defendant's interpretation – that 19 U.S.C. § 58c(d) defines when Fee are owed – there would be no overpayment in that situation because, again, a Fee would be due for every ticketed passenger regardless of whether they travel. And, here again, Southwest's interpretation avoids the inconsistency. Because Section 58c(a)(5)(A) – not Section 58c(d) – defines when a Fee is owed, there is an overpayment whenever a Fee was paid to CBP but the customer does not travel.

CBP's comments to the Government Accountability Office ("GAO") in connection with Report GAO-10-785 that Defendant mentions are also consistent with Southwest's position. *See* Def.'s Mem. at 5. The report states that, "[a]ccording to CBP, relevant statutes authorize airlines to refund fees *if services are not rendered*." GAO-10-785 at 32 (emphasis added); *see also id*. at "Highlights" page.[5] The statute makes no mention of refunds at all, so the only way this statement makes sense is if Fees are not due when a ticketed customer ends up not travelling and thus receives no customs services.

There is yet another reason to reject Defendant's interpretation that CBP can be entitled to a Fee even if there is no passenger and no customs services. "A user-fee rationale may be invoked whenever the United States is recovering a fair approximation of the cost of benefits supplied." *Massachusetts v. United States*, 435 U.S. 444, 463 n.19 (1978). When the customer

---

[5] GAO, *Commercial Aviation: Consumers Could Benefit from Better Information about Airline-Imposed Fees and Refundability of Government-Imposed Taxes and Fees* (July 2010), *available at* https://www.gao.gov/assets/gao-10-785.pdf.

does not travel and receives no customs services, the only "fair approximation of the cost of benefits supplied" by CBP is zero and CBP is not entitled to any Fee. *See, e.g.*, Ingalls Dep. at 45:12-19 (ECF No. 40-7 at ECF p. 46) (there is an "overpayment" if "the passenger doesn't fly, didn't get inspected" but "a fee had been paid to CBP for that instance," "because the airline has paid [CBP] something that isn't due because the inspection didn't occur"). Thus, Defendant's interpretation would raise Constitutional concerns. Fortunately, though, the most natural reading of the statute – that the Fee applies only "for the provision of customs services" by CBP "for the arrival of each passenger aboard a" plane, 19 U.S.C. § 58c(a)(5)(A) – avoids these concerns.

In sum, the statute and regulations are each clear: CBP is entitled to a Fee only when a passenger arrives in the United States on a plane, meaning CBP renders customs services to that passenger. Although there are separate reasons to rule in Southwest's favor, this purely legal issue is dispositive and the Court's analysis should end here.

## II.    DEFENDANT'S POSITIONS THAT AN AMOUNT REMAINS A "COLLECTED" FEE UNLESS IT HAS BEEN REFUNDED TO THE CUSTOMER AND THAT A REFUND MUST BE IN CASH HAVE NO BASIS IN THE LAW AND ARE SPUN FROM WHOLE CLOTH.

Even assuming *arguendo* that Section 58c(d) means that CBP is entitled to a Fee every time an airline "collects" a Fee and even if there is no passenger (and that is decidedly not the case, as demonstrated above), Southwest is still entitled to summary judgment. Defendant concedes that a Fee can become "uncollected" so as to undo any Fee liability under Section 58c(d). Defendant's theory then veers far from the statutory (and regulatory) text when it claims both that a "refund" is the only way a Fee can become uncollected and that cash is the only thing that qualifies as a refund. Both aspects of this two-step argument are wrong and are completely unmoored from the law.

**A.      No Statutory or Regulatory Authority Provides that a "Refund" Is the Only Way a Fee Can Become "Uncollected."**

In Section II of its opening brief, Southwest demonstrated that a "refund" is not the only way a Fee can cease to be collected and that the issuance of an RTF – whether eventually used or not – is the return of value to the customer, meaning the Fee is no longer collected and therefore not owed to CBP.  Defendant failed to respond to that section, and should not be permitted to do so in its reply.

Without any analysis or authority, Defendant nonetheless contends that a "refund" is the only possible way a Fee can cease to be collected.  *See, e.g.*, Def.'s Mem. at 19; 2010 CBP Letter at 1.  Thus, Defendant improperly frames the question as being limited to "whether the mere issuance of an [RTF] that is later forfeited, qualifies as a 'refund' of the customs inspection fee." Def.'s Mem. at 17.  That is not the only issue.  A separate issue is whether a "refund" is the only way for a Fee to cease to be "collected" under 19 U.S.C. § 58c(d).  It is not.

Neither the statute nor regulations say that a refund is the only way a Fee ceases to be "collected."  Neither the statute nor regulations even uses the word "refund."  In fact, the concept was wholly manufactured by CBP for the first time in 2010 CBP Letter (decades after the statute was enacted).  Although Defendant begins its argument about the 2010 CBP Letter by seeking to apply typical statutory and regulatory interpretation techniques to the letter (*see* Def.'s Mem. at 14-15), the letter is not a statutory, regulatory, or other legal text.  Nor is it entitled to any deference or respect in interpreting the statute or regulations.  As a threshold matter, Defendant has waived the right to argue for deference.  Def.'s Fact Response ¶ 70.  In any event, deference is inappropriate because (1) this Court must decide all questions of law (such as the meaning of "collected" under Section 58c(d)), (2) there is no true ambiguity the Court cannot resolve through ordinary statutory interpretation methods, (3) CBP has no special expertise in what it

means for an amount to be "collected," (4) the limited regulatory authority granted by the statute

is to the "Secretary of the Treasury" not the Director of CBP's Revenue Division (*compare* 19

U.S.C. § 58c(g)(1) *with* 2010 CBP Letter at 2 (ECF No. 14-1 at ECF p. 83)), and (5) CBP's

interpretation has not been consistent. *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244,

2261-63, 2267 (2024); *Kisor v. Wilkie*, 588 U.S. 558, 574-75, 578 (2019).

Further, Defendant has already conceded that a "refund" – which Defendant now seeks to

define as the return of money, *see* Def.'s Mem. at 15 – is not the only way that a Fee can cease to

be collected.  Specifically, Defendant admits that CBP is not entitled to a Fee on a Fee-qualifying

ticket if (1) the ticket is not used for transportation, (2) the airline issues the customer an RTF

that includes the Fee amount, and (3) the customer uses the entire RTF to purchase a new flight

(even if the new flight has no international segment).  Def.'s RFA Response at 3, 4 (Request

Nos. 7, 10) (ECF No. 40-8 at ECF pp. 4, 5).  As explained in Southwest's opening brief (at 17-

18), CBP concedes that a Fee becomes uncollected (and thus not owed to CBP) whenever

something of value equal to or greater than the Fee has been given to the customer, even if given

in a form other than money.  Thus, for example, CBP states that it is not entitled to a Fee if the

airline gives the customer "some sort of value or credit that they actually used" to purchase

another flight.  Ingalls Dep. at 80:20-81:5 (ECF No. 40-7 at ECF pp. 81-82).

In short, there is simply no statutory or other basis for Defendant's assertion that a Fee

can become uncollected only if it is refunded to the customer.

### B.    No Statutory or Regulatory Authority Provides that a Refund Must Be in Cash or to the Customer's Form of Payment.

The next step in Defendant's argument – that only cash or the like qualifies as a refund –

is also divorced from the statutory and regulatory text and made from whole cloth, further

trampling on the teachings of *Loper Bright* and *Kisor v. Wilkie*.  Because the word "refund" is

13

not found in the statute or regulations, it is no surprise that neither of those sources defines the term. Seeking to apply statutory interpretation methods to the 2010 CBP Letter – which is again not a statute or legal text of any kind – Defendant argues that dictionary definitions should be consulted. Def.'s Mem. at 14-15. But none of the dictionary definitions answer the question at hand: whether a "refund" must be in cash or whether credit suffices.[6] Nor do any cases Defendant cites address that issue. *See id.*

   "[T]he plain ordinary meaning of a 'refund' encompasses concepts of distribution by either cash or credit" and "[r]efunds may be issued in cash or in credit." *Davis v. Cent. Ala. Elec. Coop.*, No. 15-0131, 2015 WL 5285894, at *5 n.7 (S.D. Ala. Sept. 8, 2015). "For example, modern consumers who return purchases to retailers are well accustomed to receiving refunds in the form of store credit, rather than cash." *Id.* "Innumerable examples can be found—both inside and outside the law—of 'refunds' made via credit to an account rather than cash on the barrelhead." *Id.*; *see also* 7 C.F.R. § 1767.41, sec. 505(1) ("[i]nsurance policy refunds from mutual companies" can be made "in cash or as credits against subsequent purchases"). For these reasons, the court in *Davis* held that, "as a matter of statutory interpretation," the plaintiff's argument that "patronage refunds" means only "cash refunds" had to be rejected "because the common ordinary meaning of the term 'refunds' embraces both cash and credit varieties." *Davis*, 2015 WL 5285894, at *5 n.7. The court said it "cannot and will not write in the word 'cash' before 'refund' in" the statute at issue. *Id.*

---

[6] Defendant claims that, "[i]n its brief, Southwest only offers a definition of the word 'refund' as the return of money to a person who overpaid," from Black's Law Dictionary. Def.'s Mem. at 15 (citing Pl.'s Mem. at 23). However, Southwest was not "offering" that as a definition. Southwest discussed it only because Defendant had relied on Black's Law Dictionary's definition of "refund" and because that definition cited the tax context as an example of where refunds occur. *See* Pl.'s Mem. at 23-24.

In addition to failing to cite any authorities that address whether credit qualifies as a "refund," Defendant simply ignores most of the authorities Southwest cites that hold it does. Among other things, Defendant did not respond to any of the IRS authorities holding that a refund could be in the form of credit that Southwest cited in its opening brief. *See* Pl.'s Mem. at 25. Revenue Ruling 89-109 is particularly relevant because it deals with a refund by an airline to a customer of the amount paid for a ticket that is cancelled. *See* Rev. Rul. 89-109, 1989-2 C.B. 232. It holds that refunding the ticket price to the customer undoes the tax under 26 U.S.C. § 4261(a) which, as discussed in Southwest's opening brief (at 25), is a tax on the amount paid for certain transportation. Thus, it analyzes an issue relevant here: that an amount "paid" or "collected" can become unpaid or uncollected so as to undo any requirements triggered by the original payment. In a particularly analogous context, the IRS held that if an airline gives "the passenger a refund by credit rather than by cash," that is sufficient to undo the tax that was triggered by the payment for the ticket. 1989-2 C.B. at 233. This Revenue Ruling is also important because Congress intended the regulations regarding collection and remittance of the Fee to be consistent with regulations governing the tax under 26 U.S.C. § 4261. *See* 19 U.S.C. § 58c(g)(1). Although the Revenue Ruling is not a regulation and while CBP has not adopted any regulations explaining how a Fee becomes uncollected or what qualifies as a refund, the general point still holds that Congress intended collection and remittance of the tax and the Fee to work similarly.

Nor did Defendant offer any response to *Caver v. Central Alabama Electric Cooperative*, 845 F.3d 1135 (11th Cir. 2017), which also expressly held that a credit qualified as a refund. *See* Pl.'s Mem. at 26-27. Among other things, *Caver* disposes of Defendant's argument that a credit is less valuable than cash. *See* Def.'s Mem. at 16-17. The credits at issue in *Caver* were

certainly worth far less than cash because they would not be paid out "in cash for years," sometimes "as late as thirty years after the credits are earned." 845 F.3d at 1141. But the credits still qualified as refunds.[7] Separately, the cases on which Defendant relies for the point that credit is worth less than cash (*see* Def.'s Mem. at 16-17) have nothing to do with refunds; instead they arise in the class action context where the courts were trying to determine whether a proposed settlement was fair. *Caver* (and *Davis* and the IRS authorities Southwest cited) specifically address refunds and in particular whether credit qualifies as one. *Caver* also reveals the error in Defendant's reliance on the notion that "Southwest cannot contract away the customs inspection fee." *Id.* at 17. Even if that is true, Southwest can contract with its customers about how the Fee will be returned to them. *See Caver*, 845 F.3d at 1147.

Finally, as noted in the previous subsection and in Southwest's opening brief, Defendant concedes that a utilized RTF is sufficient to render a Fee "uncollected." Yet, such an RTF is obviously not a cash refund. Thus, Defendant's concession necessarily means that either a Fee can become uncollected by something other than a "refund" or that an RTF qualifies as a refund. Either way, at least one step in Defendant's two-step argument fails.

## C.   An RTF Is a "Refund" But Even If It Were Not, It Is Still Has Value When Issued Thereby Rendering the Fee "Uncollected."

### 1.   When Issued, an RTF Is a Thing of Value, which Renders the Fee Uncollected.

Another flaw in Defendant's argument is failing to recognize that an RTF is a thing of value at the moment it is issued, regardless of whether it is eventually used. *See, e.g., Dowding v. Nationwide Mut. Ins. Co.*, 490 F. Supp. 3d 1291, 1295 (N.D. Ill. 2020) ("even if [a passenger]

---

[7] Even cash refunds can differ in value. For example, a cash refund made instantly is more valuable than a cash refund made in 30 days. But no one would say the latter is not a refund.

does not value the voucher she received as highly as the cash she expended to purchase the flight, the voucher is still worth more than $0."). In its opening brief (at 19), Southwest demonstrated that travel vouchers have value when issued – regardless of whether they are eventually used – but Defendant failed to respond.

Defendant now argues that the restrictions and "reversionary . . . nature" of an RTF mean an RTF "is worth *less* than cash of the same nominal value." Def.'s Mem. at 16-17 (cleaned up). That point serves only to underscore that an RTF is nonetheless a thing of value when issued. An RTF might be worth *less* than an equivalent amount of dollars, but it is worth something. *See Dowding*, 490 F. Supp. 3d at 1295. Because each RTF covered the value not just of the Fee but also of the airfare paid for an international ticket, an RTF's nominal value is far higher than the $5.50 Fee. *See* ECF No. 14-1 at ECF p. 70.

Other facts support that conclusion too. Out of the 100 tickets in the Audit Sample, 88 were exchanged for RTFs. Def.'s Fact Response ¶ 42. Of those 88, only 21 expired entirely unused. *Id*. ¶ 46. Thus, 67 of the 88 RTFs – more than 76% – were fully or partially used. Further, in instances where customers had a choice between an RTF and cash, the customers voluntarily chose an RTF a meaningful amount of the time. Pl.'s Rule 56.3 Statement of Undisputed Material Facts ("SUMF")[8] ¶ 13; Def.'s Fact Response ¶ 13. Thus, even if an RTF is worth less than its face value – even if worth much less – it is still worth more than $5.50, meaning that value exceeding the Fee amount was returned to the customer when the RTF was issued.

There is a separate reason cancellation of a ticket and issuance of an RTF renders any

---

[8] Plaintiff's Rule 56.3 Statement of Undisputed Material Facts can be found at ECF No. 40-2 (public version) and ECF No. 41-1 (sealed version).

amount originally collected as a Fee to no longer be "collected." Defendant admits that once the

ticket is cancelled, all of the components of the purchase price – including the Fee – cease to

exist, because the initial purchase transaction is reversed. Def.'s Fact Response ¶¶ 31-33.

Defendant asserts that this does not count as a "refund" (*id*. ¶¶ 32-33), but fails to address the

fact that, even if it is not a refund, there is no longer any collected Fee.

For these reasons, the issuance of an RTF in exchange for a cancelled ticket is the return

of value to the customer, meaning the Fee is no longer collected.

### 2.    An RTF Is a Refund, which Renders the Fee Uncollected.

Because an RTF is a thing of value when issued, the Court does not necessarily need to

wade into the question of whether an RTF is a "refund." But if the Court does address that issue,

it should find that it is. An RTF is a refund in the form of credit, just like the credit addressed in

the numerous authorities discussed in Subsection II.B. above and in Southwest's opening brief.

Again, Defendant simply ignores most of those authorities.

The single authority from Southwest's opening brief that Defendant does address is

*United Airlines, Inc. v. United States*, 111 F.3d 551 (7th Cir. 1997). *See* Def.'s Mem. at 17-19.

Defendant argues that the case "is inapposite" because there was a jury verdict and the issue was

whether there was sufficient evidence to support the verdict. *Id*. at 18. But *United Airlines* is

still highly relevant because it undermines Defendant's basic position that under its plain

meaning, a "refund" must involve the return of cash (or the like) and therefore credit cannot

qualify. If that were true, United Airlines would have lost the case as a matter of law. Defendant

also argues that the case is factually distinguishable because it involved a "cash refund" and then,

[o]nly after the refund was accomplished," the assessment of a cancellation penalty. *Id*. at 18-19.

But Defendant admits that an RTF that is later used is just as good as a cash refund, so an actual

cash refund is not required even under Defendant's theory. Separately, in the instances in *United*

*Airlines* where the cancellation penalty was 100%, there was no cash refund at all. The only refund was an accounting entry that was simultaneously netted against the cancellation penalty, meaning the customer never received any cash back as a refund.[9] *See* 111 F.3d at 552-54.

The facts here are very similar. Upon cancellation of a ticket, Southwest issued an RTF – which Defendant agrees counts as a "refund" if used. Defendant errs by failing to recognize that the issuance of the RTF completes the refund transaction. Then, there is a separate, later transaction in which the RTF expires; only then does Southwest treat the funds as revenue. Defendant is improperly trying to collapse those two transactions into one. But just as *United Airlines* involved two separate transactions – a refund and a cancellation fee – and permits a refund to exist despite the customer not receiving anything in cash (or anything of value at all), here the issuance of the RTF and its subsequent expiration are two distinct transactions. The net outcome of the two transactions is irrelevant. Thus, in *United Airlines*, it made no difference that the airline's own "witnesses admitted that the [cancellation] penalty was the retention of the money that the customer had already paid." *Id.* at 553. In other words, the end result – the airline keeping the money and never returning it to the customer – did not prevent a refund from having occurred. Similarly, the issuance of an RTF here is a refund, even if a separate transaction (the RTF's later expiration) results in Southwest retaining the money.

Defendant's argument that Southwest's RTFs "are materially different from United Airlines' refund and penalty policy," Def.'s Mem. at 18, also elevates form over substance. Southwest could have easily matched the literal terms of United Airline's policy without changing the substance of its transactions with its customers. Consider for example if, instead of

---

[9] In the instances where the customer received a partial cash refund, that cash portion of the refund was not at issue. The only dispute was about the portion that was refunded via a credit and that was simultaneously netted against the cancellation penalty. 111 F.3d at 552-54.

having an RTF expire, Southwest gave a refund of any RTF not used within a year but then imposed a 100% cancellation fee that was netted against that refund.  Or, Southwest could have offered full refunds upon ticket cancellation, simultaneously imposed a 100% cancellation fee, and then given the customers RTFs as a goodwill gesture.  These and numerous other possibilities would qualify as refunds under Defendant's narrow reading of *United Airlines*, but would not yield any actual differences in the transactions between Southwest and its customers.

Although the law is dispositive on the issue of whether RTFs qualify as "refunds," the facts further support that conclusion.  Among other things, Defendant admits that Southwest's accounting system, its e-mails to customers whose tickets are cancelled, and a CBP auditor all refer to RTFs as "refunds."  Def.'s Fact Response ¶¶ 23, 24, 28.  And, Defendant offers no direct counter-evidence to the facts that Southwest's customers, its employees, and a Forbes article also consider RTFs to be refunds, and that Southwest treats RTFs as refunds for all purposes.  SUMF ¶¶ 9, 11, 15-16, 18, 20, 25-27; Def.'s Fact Response ¶¶ 9, 11, 15-16, 18, 20, 25-27.

The only evidence Defendant points to as supposedly being in its favor is Southwest's Contract of Carriage.  Repeatedly, "Defendant avers that the Contract of Carriage provides that 'nonrefundable Tickets ***are not eligible for refunds***, except as provided in [situations not relevant to this case].'"  Def.'s Fact Response ¶¶ 9, 11, 15, 16, 20-23, 27 (emphasis and alteration by Defendant); *see also id.* ¶ 18.  However, as Defendant in one place recognizes, that provision – Section 4.c.(3)(i) – actually states:  "The fare paid for unused travel by Passengers who purchase restricted, nonrefundable Tickets are not eligible for refunds, *except as provided in this Section* and Section 9b."  SUMF ¶ 22 (emphasis added); *see also* Def.'s Fact Response ¶ 22.  While Section 9b does not cover any situations relevant to this case, Section 4.c. addresses the situation at issue here.  Namely, Section 4.c.(3) explains the form of the refund when so-called

nonrefundable tickets are cancelled: "Travel Credit." *Id*. Defendant argues that the reference to "this Section" in Section 4.c.(3)(i) instead refers to Section 4.c.(4), which deals with flight delays and involuntary cancellations. Def.'s Fact Response ¶ 22. But there is no reason to assume that reference to "this Section" is limited to subsection 4.c.(4).

Defendant also asserts that because the Contract of Carriage sometimes speaks of a ticket being as being "'refunded *or* applied as a travel credit,'" those must be completely separate concepts. *E.g.*, *id.* ¶ 9 (emphasis added by Defendant). But that is not the case, and Contract of Carriage elsewhere says that so-called nonrefundable tickets are eligible for travel credit but not for a "*cash* refund," plainly leaving open the possibility that such tickets are eligible for refunds in the form of an RTF. SUMF ¶ 8; ECF No. 14-1 at ECF p. 100 (emphasis added).

For these reasons, even assuming *arguendo* that CBP is owed a Fee whenever an airline issues a ticket and collects a Fee from the customer (without regard to whether the customer travelled on a plane or received customs services), summary judgment should still be granted in Southwest's favor either because RTFs are refunds or because once the Error Tickets were cancelled in exchange for RTFs, value was returned to the customers and there were no longer any "collected" Fees to which CBP could possibly be entitled (or both).

## III.  DEFENDANT'S CONSTRUCTIVE TRUST ARGUMENT IS A RED HERRING AND FAILS FOR OTHER REASONS.

A constructive trust is a "remedy" to address certain wrongs. Restatement (Third) of Restitution and Unjust Enrichment § 55, cmt. a (Am. Law Inst. 2011). The remedy is taking property held by the wrongdoer and giving it to the party that was wronged. *Id*. § 55(2) & cmt. b. A constructive trust applies if a party "is unjustly enriched by the acquisition of title to identifiable property at the expense of the claimant or in violation of the claimant's rights." *Id*. § 55(1).

There are at least two fundamental problems with Defendant's constructive trust argument. First, Defendant is not advocating for a constructive trust as a remedy. It does not need such a remedy because Defendant is already holding the funds in dispute. Instead, Defendant improperly argues that the presence of a constructive trust means it is entitled to the funds in the first place. That logic is backwards. Only if Defendant is entitled to the funds will a constructive trust exist. Second, the elements required for a constructive trust are not present. Among other things, Southwest has not been unjustly enriched and certainly not at Defendant's expense or in violation of its rights.

### A.    Defendant's Trust Theory Is Irrelevant.

The notion of a constructive trust in this case is irrelevant because it depends on Defendant first being entitled to the funds in dispute. *Id.*; *see also* George Taylor Bogert et al., *The Law of Trusts and Trustees* § 471 & n.33 (July 2024) (a constructive trust is "a device used by equity to compel one who unfairly holds a property interest to convey that interest to another to whom it justly belongs"). Thus, for a constructive trust even potentially to come into play, Defendant would first have to succeed on all of the issues discussed in the sections above. Even under the law cited by Defendant, a constructive trusts exists only if CBP has a right to Fees under the facts of this case, *i.e.*, where the customer cancels the ticket, does not travel, and receives but does not use an RTF in exchange for the ticket. For a constructive trust to exist, CBP must have not only a right to Fees in that situation, but must have "'a *better* right to'" the funds than Southwest does. Def.'s Mem. at 20 (emphasis added) (citation omitted). But the sole point of Defendant's constructive trust theory is to use it to argue that CBP has an entitlement to the Fees in the first place. In other words, Defendant says there is a constructive trust because CBP is entitled to the Fees, and that CBP is entitled to Fees because there is a constructive trust. The Court should reject that circular logic. The dispositive questions in this case are about

whether CBP is entitled to the Fees or not, *i.e.*, the issues discussed in the previous sections.  If CBP has such an entitlement, there is no need for CBP to show a constructive trust.  If CBP does not have such an entitlement, there cannot be a constructive trust.  Either way, the notion of a constructive trust is irrelevant.

     *Counihan v. Allstate Insurance Co.*, 194 F.3d 357 (2d Cir. 1999), which Defendant discussed at length, *see* Def.'s Mem. at 21-22, demonstrates this fundamental problem with Defendant's trust argument.  That case centered around insurance proceeds for a house that was destroyed by fire and that had been partially owned by the plaintiff.  *Counihan*, 194 F.3d at 358-59.  In a separate case, the government brought a successful forfeiture action because the house was used in a crime, but the government had been letting the plaintiff remain in the house during the pendency of the forfeiture proceedings, which is when the house burned down.  *Id*. at 359.  The dispute was whether the plaintiff or the government was entitled to the insurance proceeds, which had not yet been paid out by the insurance company and over which the government claimed a constructive trust.  *Id*. at 358.  A constructive trust made perfect sense in *Counihan* because the government had the superior right to the house, even though the plaintiff had a possessory right to it.  But imagine a different scenario in which the plaintiff defeated the forfeiture action, resulting in the government having no rights in the house.  In that case, there obviously would be no constructive trust.  Without an entitlement to the house in the first place, the government could not possibly be entitled to the insurance proceeds on the house.

     Here, because CBP has no entitlement to Fees (or anything else) when ticketed individuals cancel their ticket and do not travel on a plane, there cannot be a constructive trust (and on the other hand, if CBP had such an entitlement, there is no need for a constructive trust).

### B.      Defendant's Trust Theory Fails for Other Reasons.

Defendant argues that preventing unjust enrichment is the most important factor in a constructive trust analysis.  *See* Def.'s Mem. at 22.  In trying to win that factor, Defendant dubiously argues that CBP's "costs do not change commensurately" if a single passenger cancels a ticket and does not travel, and thus that denying CBP a Fee when a ticketed customer does not travel "would leave the Government with unpaid costs."  *Id*. at 22-23.

Defendant's argument is factually unsupported – and unsupportable – for numerous reasons, and Defendant's Rule 56.3 Statement of Undisputed Materials Facts fails to address this issue.  First, when individuals cancel tickets, that opens up available seats on the plane which are then often resold, meaning that the overall number of passengers is the same and CBP receives a Fee for every one of them.  Second, CBP offers no evidence suggesting that its staffing levels are based on the number of tickets sold (as opposed to the number of passengers expected to travel based on historical travel volumes or on the airlines' booked passengers net of cancellations), meaning that CBP has no unpaid costs when a ticketed passenger cancels the ticket and does not travel.  Indeed, it appears that CBP's Fee projections are based on "international travel forecasts" published by the U.S. Department of Commerce's Office of Travel and Tourism Industries, not on forecasted or actual ticket sales.  Def.'s Objs. & Resps. to Pl.'s Second Set of Interrogs. at 3 (Ex. A hereto); *see also id*. at 4 (CBP's Fee projections are based the "Number of Anticipated Passengers").  Third, Defendant's focus on the commensurate change in CBP's costs based on a single customer not travelling is silly.  CBP would have been in the same position if that customer had never bought a ticket in the first place, but no one would say that lack of a ticket purchase "le[ft] the Government with unpaid costs."  Def.'s Mem. at 23.

Moreover, CBP's actual costs are not relevant in determining whether CBP is entitled to a Fee in a particular instance; that question is governed by the statute, which says CBP is entitled

to a Fee only when a passenger travels on a plane into the United States (and thus receives customs services). CBP is not entitled or authorized to make up any supposed cost shortfalls by collecting Fees for tickets that are cancelled and where no one travels on a plane (unless the statute entitles CBP to Fees in that situation, which it plainly does not).

For these reasons, CBP would be unjustly enriched if it keeps the funds at issue, because in instances where the customers cancelled their tickets, CBP is not entitled to a Fee under the statute and did not deliver any customs services so as to earn the Fees. Thus, even if Southwest had been unjustly enriched, it was not "at the expense of [Defendant] or in violation of [Defendant]'s rights," meaning no constructive trust is appropriate. Restatement (Third) of Restitution and Unjust Enrichment § 55(1). In any event, Southwest was not unjustly enriched because it clearly has a contractual right to the funds. Defendant acknowledges that as between the customer and CBP, the customer is entitled to the funds originally paid as a Fee on a cancelled ticket. *See* 2010 CBP Letter at 1 (ECF No. 14-1 at ECF p. 82). And it is undisputed that the customer contractually agreed that, if an RTFs expires unused, the customer forfeits the funds that had previously been transferred to the RTF (including taxes and fees) to Southwest. *See, e.g.*, Def.'s Mem. at 17 (customers "consent to the reversion of their travel funds to Southwest's coffers on expiration of the voucher"). Thus, contrary to Defendant's assertions (*e.g., id*. at 20-21, 23), Southwest cannot possibly have been unjustly enriched, because it is expressly entitled to the funds under its contract with the customers. *See, e.g.*, Restatement (Third) of Restitution and Unjust Enrichment § 2(2) ("A valid contract defines the obligations of the parties as to matters within its scope, displacing to that extent any inquiry into unjust enrichment.").

Aside from unjust enrichment, none of the other factors for a constructive trust under the New York state law test advocated by Defendant are present either, unless Defendant succeeds in separately showing that it has an entitlement to the Fee in the first place (in which case it does not need to show a constructive trust).[10]  Any fiduciary relationship or implied promise between Southwest and CBP (and Southwest does not concede there ever was either one of those) ended once the ticket was cancelled.  Nor is there any reliance by CBP.  Even under Defendant's view, CBP was not expecting any Fees on cancelled tickets where the Fee was refunded by Southwest to the customer (an event entirely outside of CBP's control).  Thus, CBP cannot have relied on ever receiving a Fee for a cancelled ticket.

## IV.    CBP DID NOT GIVE SOUTHWEST FAIR NOTICE OF ITS INTERPRETATIONS.

If the Court finds that:  (1) 19 U.S.C. § 58c allows CBP to obtain a Fee only when a passenger travels on a plane into the United States, or (2) that an RTF is the return of value when it is issued such that the Fee is no longer collected, or (3) that an RTF is a "refund," then summary judgment should be granted in Southwest's favor.  But even if the Court were to rule against Southwest on each of those three points, summary judgment should not be granted in Defendant's favor.  That is because even if Defendant is right on each of these three points, it failed to give Southwest fair notice of its interpretation that CBP is entitled to a Fee for a ticketed individual who does not travel and does not receive customs services, unless the airline has refunded the Fee in cash (or equivalent) to that individual.

---

[10] Aside from the four factors under New York law, other states hold that "[f]raud may be an essential element" for a constructive trust.  *The Law of Trusts and Trustees* § 471 & n.33 (citing cases from 14 states).  There are no allegations of fraud here, nor could there be.

The fair notice doctrine prevents enforcement of regulations that do not "give an adequate warning of what they command or forbid." *Diebold, Inc., v. Marshall*, 585 F.2d 1327, 1334-35 (6th Cir. 1978). The doctrine bars punishing a regulated entity unless "a regulated party acting in good faith would be able to identify, with 'ascertainable certainty,' the standards with which the agency expects parties to conform." *Gen. Elec. Co. v. EPA*, 53 F.3d 1324, 1329 (D.C. Cir. 1995). Even where the agency's interpretation is "the most reasonable of the available alternatives," the fair notice doctrine prohibits punishment if the regulations do not "give an adequate warning of what they command or forbid." *Diebold, Inc.*, 585 F.2d at 1334-35; *see also Gen. Elec.*, 53 F.3d at 1333-34 (finding that "EPA did not provide GE with fair warning of its interpretation of the regulations" even though "EPA's interpretation of the regulations is permissible"); *Trinity Broad. of Fla., Inc. v. FCC*, 211 F.3d 618, 627, 632 (D.C. Cir. 2000) (finding that the agency's interpretation was barred from being enforced by the fair notice doctrine even though it was reasonable).

Here, CBP seeks to enforce an interpretation that is not in CBP's regulations but rather is expressed only in the 2010 CBP Letter. As discussed above, that letter is not entitled to any deference or respect, and so it carries no weight in connection with any statutory or regulatory interpretation questions. But, in the event the Court rules against Southwest on all the statutory interpretation issues, then the 2010 CBP Letter could be relevant as to the separate question of whether Southwest was given adequate notice of the law, since that letter is the only notice Defendant claims Southwest received.[11] There are two separate reasons why CBP has failed to prove that the letter itself constitutes adequate notice of CBP's interpretations to Southwest.

---

[11] Under the fair notice doctrine, the statute or regulations themselves might provide adequate notice. But here, Defendant concedes that "[t]he statute does not address [the] situation" in this

First, CBP has failed to show the lack of a factual dispute about whether Southwest actually received the 2010 CBP Letter before the Audit.[12]  CBP did not send the letter to any airline.  Ingalls Dep. at 32:5-10 (ECF No. 40-7 at ECF p. 33).  One of CBP's Rule 30(b)(6) witnesses testified that he might have discussed the letter at industry meetings, but has "no specific recollection of" such meetings and, in any event, does not know if Southwest was in attendance.  *Id*. at 32:18-33:7 (ECF No. 40-7 at ECF pp. 33-34).  Nonetheless, Defendant argues that Southwest must have known of the letter because Southwest employee Ann Jaycox testified that Southwest is a member of Airlines for America (one of the two trade groups to which the 2010 CBP Letter was sent) and that Southwest receives communications from Airlines for America.  Def.'s Mem. at 16 (citing Jaycox Dep. at 43:11-24).  But the record is devoid of evidence that Southwest actually received the 2010 CBP Letter from Airlines for America or from any other source.  *See* Jaycox Dep. at 43:22-24 (ECF No. 40-4 at ECF p. 44).  Meanwhile, one of CBP's Rule 30(b)(6) witnesses testified that he has no knowledge of Airlines for America sending the letter to Southwest or of Southwest receiving the 2010 CBP Letter before the Audit.  Ingalls Dep. at 33:15-34:3 (ECF No. 40-7 at ECF pp. 34-35).

Second, even had Southwest received the 2010 CBP Letter before the Audit, CBP never explained with "ascertainable certainty," *General Elec. Co.*, 53 F.3d at 1329, what CBP meant by the word "refund" or that its view was that travel credit did not qualify as a refund.  In this regard, one of CBP's Rule 30(b)(6) witnesses testified that he had no knowledge of informing Southwest or the airline industry of "any definition of the word refund," of "any information

---

case:  whether the issuance of an RTF "qualifies as a 'refund.'"  Def.'s Mem. at 17.  Nor do the regulations which, like the statute, do not use the term "refund," let alone define it.

[12] Defendant's Rule 56.3 Statement of Undisputed Materials Facts does not even address this issue, and thus summary judgment in Defendant's favor on this issue could be denied on that basis alone.  *See* USCIT R. 56.3(a).

about the notion of refunds," or "that CBP considers a travel credit not to be a refund unless it's actually utilized by the purchaser."  Ingalls Dep. at 126:4-16 (ECF No. 40-7 at ECF p. 127).

Defendant has not shown that, before the Audit, CBP communicated to Southwest its interpretations (1) that CBP is entitled to a Fee for a ticketed individual who does not travel and does not receive customs services, unless the airline has refunded the Fee to that individual, or (2) that CBP meant "refund" to cover only cash (or equivalent) refunds but to exclude credit. Because Southwest did not have fair notice of those interpretations, the Assessment should not stand, even if the Court adopts CBP's interpretations.

## **CONCLUSION**

CBP has illegally exacted $444,673.39 from Southwest, for three separate reasons.  First, the statute and the regulations are clear that CBP is entitled to a Fee only when a passenger arrives from abroad into the United States on a commercial aircraft, which never occurred for any of the Error Tickets.  Second, even if CBP could be entitled to a Fee when no passenger travelled (and CBP performed no customs services) and Fee liability instead depended on whether there was a ticketed individual from whom a Fee had been collected, any Fees ceased to be collected once the tickets were canceled and RTFs were issued to the customer (regardless of whether RTFs qualify as "refunds").  There is no statutory, regulatory, or other basis for Defendant's view that the only way a Fee can become uncollected is via a "refund" to the customer.  That view is embodied only in the 2010 CBP Letter, which is not the law and is not entitled to any deference or respect.  Third, Southwest did in fact provide refunds when it issued RTFs upon ticket cancellation, so no Fees were owed to CBP even if the 2010 CBP Letter was the law.  For any of these three independent reasons, the Court should grant Southwest's motion for summary judgment, deny Defendant's cross-motion, and should enter judgment in

Southwest's favor against Defendant in the amount of $444,673.39, plus interest thereon as allowed by law.

Further, even if the Court rules against Southwest on all three of these issues, as it must do before needing to turn to Defendant's cross-motion, it should deny Defendant's cross-motion because Defendant has failed to show the absence of a dispute about whether CBP gave Southwest fair notice of CBP's current interpretations that a Fee is owed to CBP for every ticketed individual unless a cash refund of the Fee has been given to that individual. The evidence fails to demonstrate that the 2010 CBP Letter was given to Southwest before the Audit and, in any event, the letter says nothing about the form a "refund" must take.

August 30, 2024
Washington, DC                              Respectfully submitted.

   */s/ Adam P. Feinberg*
Adam P. Feinberg
Richard A. Mojica
Miller & Chevalier Chartered
900 16th Street NW
Washington, DC 20006
Phone: (202) 626-5800
Fax: (202) 626-5801
afeinberg@milchev.com
rmojica@milchev.com

*Attorneys for Plaintiff, Southwest Airlines Co.*

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE:  THE HON. GARY S. KATZMANN, JUDGE

_____
                                                        :
SOUTHWEST AIRLINES CO.,                  :
                                                        :
                              Plaintiff,              :        Court No. 22-00141
                                                        :
              v.                                        :
                                                        :
UNITED STATES,                               :
                                                        :
                              Defendant.           :
_____:

## CERTIFICATE OF COMPLIANCE

In accordance with the U.S. Court of International Grade Standard Chambers Procedures, I, Adam P. Feinberg, state that this brief complies with the word count limits and contains 10,139 words.  I have relied on the word count of the word-processing system used to prepare the brief.


August 30, 2024
Washington, DC                              Respectfully submitted.

                                                      _/s/ Adam P. Feinberg_____
                                                    Adam P. Feinberg
                                                    Richard A. Mojica
                                                    Miller & Chevalier Chartered
                                                    900 16th Street NW
                                                    Washington, DC 20006
                                                    Phone: (202) 626-5800
                                                    Fax: (202) 626-5801
                                                    afeinberg@milchev.com
                                                    rmojica@milchev.com

                                                    *Attorneys for Plaintiff, Southwest Airlines Co.*