UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. GARY S. KATZMANN, JUDGE

_____
                                          :
SOUTHWEST AIRLINES CO.,                   :
                                          :
                        Plaintiff,        :
                                          :
            v.                            :        Court No. 22-00141
                                          :
UNITED STATES,                            :
                                          :
                        Defendant.        :
_____ :

## **DEFENDANT'S REPLY BRIEF IN FURTHER SUPPORT OF ITS CROSS-MOTION FOR SUMMARY JUDGMENT**

                              BRIAN M. BOYNTON
                              Principal Deputy Assistant Attorney General

                              PATRICIA M. McCARTHY
                              Director

                              AIMEE LEE
                              Assistant Director
                              International Trade Field Office

Of Counsel:
James R. Cohee                GUY EDDON
Senior Attorney               Trial Attorney
Office of the Assistant Chief Counsel,   International Trade Field Office
Indianapolis                  Department of Justice, Civil Division
U.S. Customs and Border Protection       Commercial Litigation Branch
                              26 Federal Plaza, Room 346
                              New York, New York 10278
                              (212) 264-9230 or 9236
                              *Attorneys for Defendant*

Dated: October 24, 2024

# TABLE OF CONTENTS

ARGUMENT ........................................................................................................... 2

I.    Southwest Is Required By Statute to Collect and Remit Customs Inspection Fees .......... 2

II.   The Statute And The Regulations Support The Government's Position .......................... 3

      A.  Southwest Should Not Deprive Its Customers Of A Refund Of
          Governmental Fees When A Ticket Is Canceled ..................................................... 3

      B.  Southwest Should Not Deprive CBP Of The Fee It Collected On CBP's Behalf
          When A Ticket Is Canceled ................................................................................ 7

III.  Southwest's One-Year Travel Credit Is Not A Refund Of The Fee .............................. 10

IV.   Whether Southwest Received CBP's 2010 Letter Is Irrelevant ..................................... 12

V.    Southwest Is Not Equitably Entitled To The Customs Inspection Fee ........................... 14

CONCLUSION ...................................................................................................... 17

# TABLE OF AUTHORITIES

## <u>Cases</u>

*American Airlines, Inc. v. U.S.*,
    551 F.3d 1294 (Fed. Cir. 2008) .................................................................................*passim*

*Dowding v. Nationwide Mut. Ins. Co.*,
    490 F. Supp. 3d 1291 (N.D. Ill. 2020) ................................................................................ 11

*Massachusetts Mut. Life Ins. Co. v. U.S.*,
    782 F.3d 1354 (Fed. Cir. 2015) ........................................................................................... 12

*Massachusetts v. United States*,
    435 U.S. 444 (1978) ......................................................................................................... 9, 10

*United States v. McConnell*,
    258 B.R. 869 (N.D. Tex. 2001) ...................................................................................5, 7, 15

## <u>Statutes</u>

8 U.S.C. § 1356 ................................................................................................................................ 2

19 U.S.C. § 58c .....................................................................................................................*passim*

## <u>Rules</u>

USCIT Rule 56.3 ........................................................................................................................... 13

## <u>Regulations</u>

19 C.F.R. § 24.22(g) .............................................................................................................*passim*

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE:  HON. GARY S. KATZMANN, JUDGE

_____
                                       :

SOUTHWEST AIRLINES CO.,            :
                                         :

                   Plaintiff,     :
                                         :

             v.                  :      Court No. 22-00141
                                         :

UNITED STATES,                 :
                                         :

                  Defendant.   :
_____:

### DEFENDANT'S REPLY BRIEF IN FURTHER SUPPORT OF ITS CROSS-MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 56 of the Rules of the United States Court of International Trade (USCIT), defendant, United States (the Government), hereby submits this reply brief in further support of its cross-motion for summary judgment.  ECF Nos. 46-47.

As outlined in defendant's cross-motion for summary judgment, this case of first impression raises the important question whether the customs inspection fee charged and collected by plaintiff, Southwest Airlines Co. (Southwest), from its customers, pursuant to 19 U.S.C. § 58c and 19 C.F.R. § 24.22(g), at the time the airline ticket is purchased, can be retained as profit by Southwest when that airline ticket is later canceled.  This case addresses the specific, narrow situation of when an individual purchases a ticket, that ticket is canceled, and the value of that ticket is never applied towards another ticket or refunded but is instead forfeited to Southwest.  In such a situation, the individual purchaser receives nothing.  Southwest not only retains the airfare for a flight that the passenger did not take, but also keeps the customs inspection fee intended for U.S. Customs and Border Protection (Customs or CBP) as well as other Government user fees not subject to this Court's jurisdiction.  Southwest's action here

results in an unfair enrichment rather than the return of the customs inspection fee to the

customer in the form of a monetary refund or voucher used by the customer.  It is in this specific

situation that Southwest should not be entitled to keep the funds intended for CBP.  When

inspection fees are not returned to the customer, the Government has a better right than

Southwest to the fees that were collected, intended, and remitted to CBP pursuant to statute.

## ARGUMENT

### I.    Southwest Is Required By Statute to Collect and Remit Customs Inspection Fees

Southwest's opposition brief opens with a recitation of the statutory basis for the

Government's position:

> Defendant's statutory interpretation argument is based entirely on 19
> U.S.C. § 58c(d)(1)(A) and (d)(3), which state that "[e]ach person that
> issues a document or ticket to an individual for transportation by a . . .
> commercial aircraft into the customs territory of the United States shall . . .
> collect from that individual the fee charged under subsection (a)(5) at the
> time the document or ticket is issued" and that the "person who collects
> fees under [that provision] shall remit those fees to" the government.

Pl.'s Resp. Br. at 4 (ECF No. 49).  Each of these conditions is met here.  Southwest is a corporate

"person that issues a document or ticket to an individual for transportation by a . . . commercial

aircraft into the customs territory of the United States," and is therefore required by law to

"collect from that individual the fee charged under subsection (a)(5) at the time the document or

ticket is issued."  *Id.*  Southwest does not dispute that it is required to and does in fact collect the

inspection fee from its customers and, therefore, as a corporate "person who collects fees under

[that provision]," it is required by to law to "remit those fees to" the Government.  *Id.*; *see also*

*American Airlines, Inc. v. U.S.*, 551 F.3d 1294, 1300 (Fed. Cir. 2008) (analyzing 8 U.S.C.

§ 1356(f), which governs a different CBP user fee but is virtually identical in relevant part to 19

U.S.C. § 58c(d)).  Southwest acknowledges that the "statute is not ambiguous when read as a

whole," Pl.'s Resp. Br. at 5, but nevertheless argues that the Government's plain language "interpretation cannot be correct." *Id.*

Here, the parties agree that the statute plainly provides for the collection of the fee by an airline from an airline's customers and remittance of the fee by the airline to the Government. As is meaningful here, the statute does not provide for an airline carrier to retain the fee when a customer does not use the carrier's transportation services and consequently customs inspection services. Thus, in the situation where a carrier's customers do not use their purchased ticket, not only does Southwest keep its customers' paid fare, but by this action Southwest seeks also to keep the fee that is statutorily due to the Government. Southwest's position is unsupported by law.

## II.    The Statute And The Regulations Support The Government's Position

Southwest's primary argument is that "the plain language of the statute and regulations do not authorize CBP to assess a fee when a ticket is canceled, no passenger arrives in the U.S. aboard a commercial aircraft, and thus no customs services are rendered by CBP." Pl.'s Resp. Br. at 4 (capitalization removed). This argument fails to recognize that while the fee collected is intended for inspection services, there is no requirement that a passenger must travel for such a fee to be remitted once collected by the carrier.

### A.  Southwest Should Not Deprive Its Customers Of A Refund Of Governmental Fees When A Ticket Is Canceled

We acknowledge that the customers who paid the fees at issue did not fly and were not inspected by CBP. However, these fees were properly collected by Southwest and should have been returned to the customer when the customer does not use the purchased ticket. *See* CBP letters to airlines (ECF Nos. 47-3 and 47-4). This is not a dispute about whether the customer owes the fee; rather, this case is about whether Southwest refunded to its customers the fees that

3

it insists those customers do not owe.  Taking Southwest's argument to its logical conclusion, if a customer who does not travel does not owe the inspection fee, then Southwest should refund the fee to the customer—a resolution condoned by the Government.  However, that is not the case here.  Southwest keeps for itself the amount of the customer's airfare and desires to keep the cost of the inspection fee that was collected on behalf of the Government.  This distinction is crucial because, in this case, Southwest informed the Government that it *had* refunded the fees to the customer when it took a credit on a later quarterly remittance of fees.  It was only during the CBP audit (see Joint Fact Stipulation, ECF No. 29) that the Government discovered that Southwest had not refunded the inspection fees to the customers when the travel vouchers expired, and this issue arose.

To arrive at a comprehensive and fulsome understanding of the law, the Court should look first to the outline of the statute found at 19 U.S.C. § 58c:

| Subsection | Title |
|------------|-------|
| (a) | Schedule of fees |
| (b) | Limitation on fees |
| (c) | Definitions |
| (d) | Collection |
| (e) | Provision of customs services |
| (f) | Disposition of fees |
| (h) | Omitted |
| (i) | Effect on other authority |
| (j) | Effective dates |
| (k) | Advisory committee |
| (l) | Adjustment of fees for inflation |

Southwest argues that "the overall statutory schemes make clear that Section 58c(d) [*i.e.*, "Collection"] merely describes the general process for collection and remittance of Fees but was not intended to define the circumstances under which a Fee is owed to CBP[.]"  Pl.'s Resp. Br. at 7.  However, CBP does not contend that a fee is owed by the customers who did not fly.  *Id.*

Although subsection (a) sets forth the circumstances when passengers owe the fees,[1] this part of the statute is not the correct place to find "the circumstances under which a Fee is owed to CBP" by a carrier that has nevertheless collected the fee from a customer who did not fly.  Rather, subsection (d) of the statute, "Collection," which defines when and under what circumstances a commercial carrier must collect and remit the customs inspection fee to the Government, is the germane section of the statute.  Subsection (d)(1) specifies who must collect the fee and under what circumstances:

> (1)    Each person that issues a document or ticket to an individual for transportation by a commercial vessel or commercial aircraft into the customs territory of the United States shall—
>
> (A)    collect from that individual the fee charged under subsection (a)(5) at the time the document or ticket is issued; and
>
> (B)    separately identify on that document or ticket the fee charged under subsection (a)(5) as a Federal inspection fee.

19 U.S.C. § 58c(d)(1).  Subsection (d)(3) specifies that:

> (3)    The person who collects fees under paragraph (1) or (2) shall remit those fees to the Secretary of the Treasury at any time before the date that is 31 days after the close of the calendar quarter in which the fees are collected.

19 U.S.C. § 58c(d)(3).

It is important to step back and properly understand Southwest's role in the fee collection process.  As the carrier issuing tickets and collecting fees, Southwest is "merely…a receiving and transmitting agent for the funds."  *United States v. McConnell*, 258 B.R. 869, 874 (N.D. Tex. 2001) (discussing the role of a collector of CBP immigration user fees).  Southwest's role in this process established by Congress is simply to "more easily facilitate the collection of . . .

---

[1]  The *American Airlines* court made clear that passenger inspection user fees are owed by the passenger and not the carrier.  551 F.3d at 1300.

inspection fees" for the Government. *Id.* Pursuant to 19 U.S.C. § 58c(d), when Southwest issues a ticket for travel into the United States, it must collect the fee and remit it to CBP within thirty-one (31) days after the close of the calendar quarter in which it was collected. Often, this occurs before the customer flies, so it is impossible to know at the time the fee is collected or remitted to CBP whether the customer will ultimately receive CBP inspection services.

The statute does not provide for a refund mechanism if there is an overpayment of fees. However, the operative regulations provide procedures for quarterly payments as well as overpayments and underpayments. 19 C.F.R. § 24.22(g)(5). If the customer cancels the ticket, the carrier should refund the fee to the customer, as stated in the ATA and IATA letters. Once the customer has received a refund (*e.g.*, via a cash or equivalent form-of-payment refund, or through the use of a travel voucher), only then may Southwest take a credit against a future remittance of customs inspection fees to CBP because the refund of the fee to the customer means Southwest made an "overpayment" in fees to CBP, which "may be accounted for by an explanation with, and adjustment of, the next quarterly payment to CBP." 19 C.F.R. § 24.22(g)(5). If Southwest does not take the crucial step of refunding that fee to the customer after the ticket is canceled, then Southwest has still "collected" the fee from the customer, and consequently has not made an "overpayment" of fees to CBP. So long as the fee is still collected, it must remain remitted to CBP pursuant to 19 U.S.C. § 58c(d). As the Federal Circuit observed in *American Airlines,* when the user fee statute uses the phrase "those fees," it "plainly refers" to the fees actually collected, and not some "theoretical total" of fees that ought to be collected based upon how many passengers flew. *American Airlines*, 551 F.3d at 1300 (Fed. Cir. 2008).

Southwest maintains in its response brief that *American Airlines* supports its position, Pl.'s Resp. Br. At 6-7, but that is inaccurate.  At issue in *American Airlines* was the under collection of fees, *i.e.*, instances where the airline had collected fewer fees than the number of passengers that travelled.  551 F. 3d at 1298.  American Airlines successfully argued that it was responsible for remitting only those fees it was able to collect and not a theoretical (higher) number of fees based on the total number of passengers who flew and were inspected.  *Id.* at 1300-01.  Here, Southwest has over collected fees based on the number of passengers who flew and were inspected, yet it maintains that it does it does not have to remit those fees that it nevertheless over collected.  Both in *American Airlines* and here, there is a discrepancy between the fees collected and the passengers who flew.  When the airline under collects, it does not have to remit the difference, but according to Southwest, when the opposite occurs and an airline over collects, the airline gets to keep the difference.  Under Southwest's reasoning, whether the airline over collects or under collects, the airline always benefits, and the Government loses.  Such a result would be inconsistent with the holding of *American Airlines* that airlines are supposed to remit fees based on *collection* and not *passengers flying*.  *American Airlines* is also consistent with the *McConnell* case's holding that the airline is "merely . . . a receiving and transmitting agent for the funds," and that the airline should remit whatever fees it collects regardless of the number of passengers who flew.  *McConnell*, 258 B.R. at 874.

B.  Southwest Should Not Deprive CBP Of The Fee It Collected On CBP's Behalf When A Ticket Is Canceled

Importantly, nothing in subsection 58c(d), or anywhere else in the entirety of the statute, can remotely be read to support Southwest's position that the "person" who collects the customs inspection fee may keep and profit from it if the customer cancels the ticket.  Southwest does not even attempt to justify its position that it is entitled to keep the customs inspection fee pursuant

to the statute. Rather, Southwest appears to adopt the legal cliché that possession is nine-tenths of the law. Since Southwest is required by statute to collect the customs inspection fee from its customers, Southwest appears to think that the collected inspection fees are its to do with as it pleases, including to force its customers to consent to waiving their right to a refund via Southwest's Contract of Carriage. This view simply neglects its statutory obligation not only to collect, but to remit what it collects.

Southwest argues that its Contract of Carriage, the terms of which Southwest's customers must accept when purchasing a ticket, should prevail over the Government's statutory right to the customs inspection fee that Southwest collects from its customers on the Government's behalf. *See* Pl.'s Mot. for Summ. J. at 3 (ECF No. 40-1) ("As further provided in the Contract of Carriage, if the customer elects not to use the [voucher] for future travel within the eligibility period (which was one year during the period at issue), the entire amount of the [voucher] is forfeited to Southwest."). Southwest, however, cannot provide either a statutory or an equitable argument that it is affirmatively entitled to the keep the customs inspection fee. Instead, Southwest argues that the fee is not owed by the customer, and that the Government is not entitled to the very fee that the statute requires Southwest to collect on the Government's behalf. Southwest hypocritically objects to remitting the fee to CBP because the agency did not provide any inspection services, but Southwest itself has no trouble keeping all of its customer's airfare when Southwest provides no transportation services. And by this action, Southwest argues that it is also entitled to keep the fee collected and intended for CBP. Southwest's arguments should be rejected.

Southwest next attempts to distract with its argument that the regulations found at 19 C.F.R. § 24.22(g)(4)(i), concerning "any infant traveling without a separate ticket or travel

document," are somehow inconsistent with the Government's plain language reading of the statute. Pl.'s Resp. Br. at 7. Specifically, Southwest argues that "[b]ecause no one issues a ticket or travel document to an 'infant traveling without a separate ticket or travel document,' the airline would not be required to collect a Fee under Defendant's interpretation." *Id.* at 7-8. This red herring argument is not only irrelevant but is also inaccurate. First, Southwest's website helpfully notes that "[f]or international travel, applicable government-imposed taxes and fees must be paid, and a ticket will be issued for each person, regardless of age. *See* https://support.southwest.com/helpcenter/s/article/flying-with-infants (last visited Oct. 5, 2024).

Second, even if Southwest did not issue a ticket to an infant, the applicable regulation states that:

> The fee must be separately identified with a notation "Federal inspection fees" on the ticket or travel document issued to the passenger to indicate that the required fee has been collected. A fee relative to an infant traveling without a ticket or travel document may be identified instead with the notation on a receipt or other document issued for that purpose or to record the infant's travel.

19 C.F.R. § 24.22(g)(4)(i). So even if Southwest did not issue tickets to infants on international flights, which its website says that it does, Southwest would nevertheless be required to collect the required customs inspection fee and remit it to the Government. Thus, both the statute and the regulations are compatible with the Government's commonsense position that there is no basis for Southwest to profit from the customs inspection fee that it collects from its customers pursuant to law.

In yet another inapposite argument, Southwest quotes a sentence from footnote 19 found in *Massachusetts v. United States*, 435 U.S. 444, 463 n.19 (1978) ("A user-fee rationale may be invoked whenever the United States is recovering a fair approximation of the cost of benefits supplied."). Pl's Resp. Br. at 10. *Massachusetts v. United States* addressed whether states are

immune from a federal tax on civil aircraft enacted to fund "the expansion, improvement, and maintenance of the air transportation system[.]"  *Massachusetts v. United States*, 435 U.S. at 448. Without citation or explanation, Southwest suggests that the Government's "interpretation would raise Constitutional concerns."  Pl's Resp. Br. at 11.  In fact, there are no Constitutional concerns here.  The customs inspection fee at issue here is designed to "recover[] a fair approximation of the cost of benefits supplied," namely the customs inspection services provided by the Government when passengers on an international flight land in the United States.  While in specific instances passengers and their luggage are subject to an extensive inspection, most passengers are cleared through a less invasive inspection process and, with the tickets at issue in this case, no inspection at all occurred.  The specific circumstances do not change the fact that the customs inspection fee is a user-fee by which the United States recovers "a fair approximation of the cost of benefits supplied."

III.    **Southwest's One-Year Travel Credit Is Not A Refund Of The Fee**

Southwest devotes significant attention in both its opening brief and reply brief to arguing that a travel credit constitutes a refund or return of value to the customer and criticizes the Government for not responding to its arguments.  But Southwest frames the question too broadly.  The issue before the Court is *not* whether a travel credit is a refund, but rather whether a time-limited travel credit that expires and is forfeited in its entirety, is a sufficient refund for the fee to qualify as "uncollected" and thus enable Southwest to keep the fee it collected.  In the audit, CBP allowed instances where the customer used all or even a portion of the travel voucher to qualify as a refund.  The only inspection fees at issue here for which Southwest seeks a refund in this case, are inspection fees associated with travel vouchers that Southwest extinguished before the customer was able to use any portion.  The Court need not reach the question of

whether travel vouchers may generally constitute refunds because in the audit CBP did not

dispute instances where the customer was able to use some or all of the travel voucher.[2]

Perhaps tellingly, Southwest devotes relatively little effort to addressing the key issue of

its time-limited travel vouchers.  The crux of Southwest's discussion of this point in its response

brief centers on a case Southwest did not cite in its opening brief, *Dowding v. Nationwide Mut.*

*Ins. Co.*, 490 F. Supp. 3d 1291 (N.D. Ill. 2020).  Despite Southwest's selective quotation from

the case that a time-limited travel voucher "is still worth more than $0," *id.* at 1295, the case

does not support Southwest's position here.  While the court in *Dowding* concluded that a time-

limited voucher is worth more than $0, the court nevertheless refused to dismiss plaintiff's

breach of contract claim against the travel insurance provider because "whatever the value of the

voucher [the plaintiff] received is, it is less than the actual cash value of the flight, so as it stands,

[plaintiff] has not been made whole[.]"  *Id.* at 1296.

Under the rationale of *Dowding*, Southwest's customers who paid the full fees but

received only a time-limited travel credit that later expired were not made whole.  Therefore,

Southwest erred by claiming these fees back from the Government in the form of a credit on a

future quarterly remittance.  Similar to the travel insurer's contention in *Dowding*, Southwest's

position here is "that it cannot be financially responsible for any difference in value between the

cash value [a customer] paid in airfare and the value [the customer] places on the quick-to-expire

voucher[.]"  *Id.*  The *Dowding* court rejected that argument as inconsistent with the operable

contract language, and this Court should likewise reject Southwest's argument here as

---

[2]  Moreover, Southwest states that it has changed its policy such that its travel vouchers
no longer expire.  *See* Southwest Eliminates Expiration Date on Travel Credits,
https://www.southwestairlinesinvestorrelations.com/news-and-events/news-releases/2022/07-28-2022-110109226 (last visited Oct. 17, 2024).

inconsistent with the plain language of the statute, as well as the ordinary meaning of the word "refund," which is "[t]o repay or restore; to return money in restitution or repayment; *e.g.* to refund overpaid taxes; to refund purchase prices of returned goods." *Massachusetts Mut. Life Ins. Co. v. U.S.*, 782 F.3d 1354, 1367 (Fed. Cir. 2015) (quoting *Black's Law Dictionary* 1281 (6th ed. 1990)).

## IV.    Whether Southwest Received CBP's 2010 Letter Is Irrelevant

Though the Government relies on the plain language of the statute and the regulations to support its position, Southwest argues that "Defendant leans heavily on the informal 2010 CBP Letter [], despite the fact that Defendant has waived the right to seek any deference or respect for the letter." Pl.'s Resp. Br. at 2.  Southwest is correct that the Government does not seek the Court's deference to the letter.  The Government does contend that the letter is entitled to respect as guidance to the commercial airline industry, which CBP issued in response to a recommendation from Government Accountability Office (GAO) to provide clarity to the commercial airline industry regarding collection and refunds of Government fees.

Southwest argues, on the one hand, that CBP's "letter is not entitled to any deference or respect, and so it carries no weight in connection with any statutory or regulatory interpretation questions." Pl.'s Resp. Br. at 27.  On the other hand, Southwest claims that the Government failed to prove "whether Southwest actually received the 2010 CBP Letter before the Audit." *Id.* at 28.  Because the Government does not seek any deference to CBP's letter, it makes little difference whether Southwest received that letter.  Certainly, Southwest does not dispute that it was a member of a commercial airline industry consortium to which the letter was sent.  And, perhaps more tellingly, Southwest does not deny that it received CBP's letter.  Instead, Southwest merely claims that the Government "has failed to show the lack of a factual dispute about whether Southwest actually received the 2010 CBP Letter before the Audit." *Id.*

Southwest does not explain why it thinks the Government was required "to show the lack of a factual dispute about whether Southwest actually received the 2010 CBP Letter before the Audit," but nevertheless attempts to supplement the seventy-three statements of undisputed material fact set forth with its motion for summary judgment, pursuant to USCIT Rule 56.3, with two additional supposedly undisputed facts related to the CBP letter.  *See* ECF No. 49-2 at 8. The Court should strike these additional statements as a violation of Rule 56.3.  Should the Court decline to strike these supplementary facts, the Government responds as follows:

1. The parties dispute whether the 2010 CBP Letter was actually provided to Southwest before the Audit at issue. Ingalls Dep. at 32:5-10, 32:18-33:7, 33:15-34:3 (ECF No. 40-7 at ECF pp. 33-35); Jaycox Dep. at 43:11-2443:22-23 (ECF No. 40-4 at ECF p. 44).

Response to Supplementary Fact No. 1:  Defendant objects that a disputed fact is not appropriate for a Rule 56.3 statement of undisputed material fact.  Subject to and without waiving its objection, defendant avers that Southwest acknowledged that it was a member of Airlines for America (at that time known as the Air Transport Association of America) when the agency sent the letters, and that it receives communications from the industry group.  Rule 30(b)(6) deposition of Ann Gordon Jaycox (August 30, 2023) at 43:11-24.

2. Before the Audit at issue, CBP never explained what it meant by the word "refund" in the 2010 CBP Letter and never communicated its view was that travel credit did not qualify as a refund.  Ingalls Dep. at 126:4-16 (ECF No. 40-7 at ECF p. 127).

Response to Supplementary Fact No. 2:  Defendant objects that this statement is unintelligible.  Subject to and without waiving its objection, defendant denies that "CBP never explained what it meant by the word 'refund' in the 2010 CBP Letter," which was sent long "[b]efore the Audit at issue."  CBP's 2010 Letter, sent nine years before the audit that led to this case, clearly explained that "[t]o the extent user fees are collected on behalf of CBP for unused tickets and such fees are not refunded to purchasers, the user fees are considered to be held in trust for the United States and must still be remitted, without credit, to CBP."  Letter from Bruce Ingalls, Director of CBP's Revenue Division, to Douglas E. Lavin, Regional Vice President for North America, International Air

13

Transport Association (Oct. 28, 2010); Letter from Bruce Ingalls, Director of CBP's Revenue Division, to James C. May, President and Chief Executive Officer, Air Transport Association of America (Oct. 28, 2010) (ECF Nos. 47-3 and 47-4).

In any event, Southwest's supplementary facts, like the prior seventy-three statements of undisputed material facts in its opening brief, are excessive and largely immaterial.  The actual undisputed facts in this case were recorded in the "First Stipulation Of Facts" filed jointly by the parties on May 22, 2023.  ECF No. 29.  The Government relies solely on those undisputed facts in support of its cross-motion for summary judgment and has no need to supplement them here. Because the letter is neither statutory nor regulatory in nature, it is not controlling here, and therefore it makes no difference whether Southwest received that letter.  The Government's argument is that based on the correct interpretation of the statute and accompanying regulations, Southwest is not entitled to profit from the customs inspection fees it collects.

## V.      Southwest Is Not Equitably Entitled To The Customs Inspection Fee

Southwest's response to the Government's equitable argument that the inspection fees are held in trust for the Government (Def.'s Cross-Motion at 19-23, ECF No. 47) is to claim that "Defendant's Trust Theory Is Irrelevant."  Pl.'s Resp. Br. at 22.  More to the point, Southwest contends that there are "two fundamental problems with Defendant's constructive trust argument."  *Id.*  First, Southwest argues that the Government "does not need such a remedy because Defendant is already holding the funds in dispute."  *Id.*  The disingenuousness of this statement is laid bare by Southwest's Complaint, which alleges that "Defendant has illegally exacted from Southwest the principal amount of $378,088.26, plus $66,585.13 in interest, all of which Southwest has paid to Defendant under protest."  Am. Compl. at ¶ 2.  So, while Southwest has paid the Government the customs inspection fees for the canceled tickets at issue here under

protest, it did so for the purpose of creating jurisdiction in this Court to sue for a refund of those inspection fees.

Second, Southwest correctly notes that "[f]or a constructive trust to exist, CBP must have not only a right to Fees in that situation, but must have 'a *better* right to' the funds than Southwest does." Pl.'s Resp. Br. at 22 (emphasis in original). As the Government's cross-motion explained, "Southwest has no equitable interest in the inspection fees that it collects from its customers and the fact Southwest commingles the trust funds with its airfare when it issues a travel voucher cannot change the nature of the inspection fees that it collects under color of law." Def.'s Cross-Motion at 21. Southwest is critical of the Government's argument that CBP is entitled to the customs inspection fees over Southwest because the fees are collected by Southwest under color of law. Moreover, Southwest contends that the Government is not entitled to the customs inspection fees for the canceled tickets because no passengers traveled on the canceled tickets and therefore there were no passengers for Customs to inspect. Southwest, however, never even attempts to put forth an affirmative argument that it is somehow entitled to profit from the customs inspection fees because there is no possible basis for such a spurious argument.

For the reasons explained in the Government's cross-motion and in this reply brief, the Government has a far better right to the customs inspection fee than Southwest. Southwest is statutorily required to collect the customs inspection fee from its customers and remit those collected fees to the Government. 19 U.S.C. § 58c. The customs inspection fee is collected by commercial airlines under color of law to fund the customs inspection services provided by the Government. *Id.* Southwest is merely the trustee for the customs inspection fees it collects. *See, e.g., McConnell*, 258 B.R. at 874 (holding that "the . . . immigration inspection fees were held in

constructive trust by the [carrier that collected them].")   Nowhere in the statute or the accompanying regulations is there found any support for Southwest's position that it is entitled to pocket the customs inspection fee as profit when a customer cancels a ticket.  The person most entitled to a refund of the customs inspection fee when a ticket for international travel is canceled is the purchaser of the ticket who paid the inspection fee.  Because Southwest has refused to provide a refund to its customers for the customs inspection fees it collected with respect to the canceled tickets at issue here, those funds, which were collected in trust for the Government, must be paid to the Government.

## **CONCLUSION**

For these reasons, in addition to the reasons set forth in our cross-motion, we respectfully request that the Court grant our cross-motion for summary judgment, deny plaintiff's motion for summary judgment, enter judgment in our favor, and dismiss this action.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

By:    /s/ Aimee Lee
       AIMEE LEE
       Assistant Director
       International Trade Field Office

Of Counsel:                                      /s/ Guy Eddon
James R. Cohee                                   GUY EDDON
Senior Attorney                                  Trial Attorney
Office of the Assistant Chief Counsel,           International Trade Field Office
Indianapolis                                     Department of Justice, Civil Division
U.S. Customs and Border Protection               Commercial Litigation Branch
                                                 26 Federal Plaza, Room 346
                                                 New York, New York 10278
                                                 (212) 264-9230 or 9236
                                                 *Attorneys for Defendant*

Dated:  October 24, 2024

17

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE:  HON. GARY S. KATZMANN, JUDGE

```
_____
                                          :
SOUTHWEST AIRLINES CO.,                   :
                                          :
                      Plaintiff,          :
                                          :
           v.                             :        Court No. 22-00141
                                          :
UNITED STATES,                            :
                                          :
                      Defendant.          :
_____:
```

### CERTIFICATE OF COMPLIANCE

I, GUY EDDON, a trial attorney in the Office of the Assistant Attorney General, Civil Division, Commercial Litigation Branch, International Trade Field Office, who is responsible for the foregoing reply memorandum in further support of defendant's cross-motion for summary judgment, relying upon the word count feature of the word processing program used to prepare the memorandum, certify that this memorandum complies with type-volume limitation under USCIT Standard Chamber Procedure 2(B) and contains 5,038 words.

/s/ Guy Eddon
Guy Eddon